## HADDOCK *v.* HADDOCK.

### ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.

No. 119.  Argued December 11, 1905.—Decided April 12, 1906.

The husband and wife being domiciled in New York, the husband left the wife, acquired, in good faith, after a lapse of years, a domicil in Connecticut, and obtained in that State, and in accordance with its laws, a judgment of divorce based on constructive, and not actual, service of process, on the wife, who meanwhile remained domiciled in New York and never appeared in the action. The wife subsequently sued for divorce in New York and obtained personal service in that State on the husband who pleaded the Connecticut judgment. *Held,*

Without questioning the power of the State of Connecticut to enforce the decree within its own borders, and without intimating any doubt that the State of New York might give it such degree of efficacy that it might be entitled to in view of the public policy of the State, that the Connecticut decree, rendered as it was without being based on personal service of the process on, and therefore without personal jurisdiction of the court over, the wife, was not entitled to obligatory enforcement in the State of New York by virtue of the full faith and credit clause of the Federal Constitution.

A suit for divorce brought in a State other than that of domicil of matrimony against a wife who is still domiciled therein is not a proceeding *in rem* justifying the court to enter a decree as to the *res,* or marriage relation, entitled to be enforced outside of the teritorial jurisdiction of the court.

Questions concerning alleged fraud in contracting a marriage and laches on the part of one of the parties in bringing an action for divorce are matters solely of state cognizance and may not even be allowed to in-

directly influence this court in determining the Federal question which is involved.

The States at the time of the adoption of the Constitution possessed full power over the subject of marriage and divorce and the Constitution delegated no authority to the Central Government in regard thereto, and the destruction of the power of the States over the dissolution of marriage as to their own citizens cannot be brought about by the operation of the full faith and credit clause of the Constitution of the United States.

Previous decisions of this court hold in regard to the full faith and credit to be given by States to the judicial decrees of other States that:

The requirement is not that some, but that full, faith and credit, equal to that to which it is entitled in the State where rendered, shall be given to a judicial decree of another State. *Harding* v. *Harding*, 198 U. S. 317.

A personal judgment against a non-resident—not a proceeding *in rem*—based merely upon constructive service and therefore jurisdiction not being acquired over the defendant's person may not be enforced in another State under the full faith and credit clause. *Pennoyer* v. *Neff*, 95 U. S. 714.

All governments possess inherent power over the marriage relation, its formation and dissolution, as regards their own citizens, and where a court or legislature of a State has acted conformably with its own laws concerning the marriage tie as to a citizen of that State, its action is binding in that State as to that citizen, and its validity under the due process clause of the Constitution may not therein be questioned. *Maynard* v. *Hill*, 125 U. S. 190.

As a corollary to the power of the State, irrespective of any extraterritorial effect, any other sovereign may, under the principles of comity give to such a decree the efficacy which its own conception of duty and public policy may justify.

Where husband and wife are domiciled in a State jurisdiction exists in that State, for good cause to enter a decree of divorce, entitled to enforcement in another State under the full faith and credit clause; and where a *bona fide* domicil has been acquired in a State by either husband or wife, a decree of divorce obtained by either in a court having personal jurisdiction of the other is likewise entitled to be so enforced in other States. *Cheever* v. *Wilson*, 9 Wall. 108.

Where the domicil of a matrimony is in a particular State, and the husband abandoning the wife, wrongfully goes into another State in order to avoid his marital obligation, such other State does not become a new domicil of matrimony, nor the actual or constructive domicil of the wife. That continues in the original State until she actually acquires a new one. *Barber* v. *Barber*, 21 How. 582.

Where the domicil of the husband is in a particular State, which is also the domicil of matrimony, the courts of that State may, in virtue of the wife's duty to be at 'the matrimonial domicil, disregard her unjustifiable absence therefrom and treat her as having her domicil therein for the purpose of dissolving the marriage and render a judgment to that effect entitled to recognition in all other States under the full faith and credit clause of the Constitution. *Atherton* v. *Atherton*, 181 U. S. 155.

THE facts, which involved the full faith and credit to be given by the courts of the State of New York to a decree of divorce, obtained in Connecticut by the husband, formerly a resident of New York, from his wife still residing in New York, based on substituted service of the summons, are stated in the opinion.

*Mr. Abram J. Rose*, with whom *Mr. William H. Willits* and *Mr. Alfred C. Petté* were on the brief, for plaintiff in error.

*Mr. Henry Willis Smith*, with whom *Mr. William T. Tomlinson* and *Mr. William W. Smith* were on the brief, for defendant in error.

MR. JUSTICE WHITE delivered the opinion of the court.

The plaintiff in error will be called the husband and the defendant in error the wife.

The wife, a resident of the State of New York, sued the husband in that State in 1899, and there obtained personal service upon him. The complaint charged that the parties had been married in New York in 1868, where they both resided and where the wife continued to reside, and it was averred that the husband, immediately following the marriage, abandoned the wife, and thereafter failed to support her, and that he was the owner of property. A decree of separation from bed and board and for alimony was prayed. The answer admitted the marriage, but averred that its celebration was procured by the

fraud of the wife, and that immediately after the marriage the parties had separated by mutual consent. It was also alleged that during the long period between the celebration and the bringing of this action the wife had in no manner asserted her rights and was barred by her laches from doing so. Besides, the answer alleged that the husband had, in 1881, obtained in a court of the State of Connecticut a divorce which was conclusive. At the trial before a referee the judgment roll in the suit for divorce in Connecticut was offered by the husband and was objected to, first, because the Connecticut court had not obtained jurisdiction over the person of the defendant wife, as the notice of the pendency of the petition was by publication and she had not appeared in the action; and, second, because the ground upon which the divorce was granted, viz., desertion by the wife, was false. The referee sustained the objections and an exception was noted. The judgment roll in question was then marked for identification and forms a part of the record before us.

Having thus excluded the proceedings in the Connecticut court, the referee found that the parties were married in New York in 1868, that the wife was a resident of the State of New York, that after the marriage the parties never lived together, and shortly thereafter that the husband without justifiable cause abandoned the wife, and has since neglected to provide for her. The legal conclusion was that the wife was entitled to a separation from bed and board and alimony in the sum of $780 a year from the date of the judgment. The action of the referee was sustained by the Supreme Court of the State of New York, and a judgment for separation and alimony was entered in favor of the wife. This judgment was affirmed by the Court of Appeals. As by the law of the State of New York, after the affirmance by the Court of Appeals, the record was remitted to the Supreme Court, this writ of error to that court was prosecuted.

The Federal question is, Did the court below violate the Constitution of the United States by refusing to give to the

decree. of divorce rendered in the State of Connecticut the faith and credit to which it was entitled?

As the averments concerning the alleged fraud in contracting the marriage and the subsequent laches of. the wife are solely matters of state cognizance, we may not allow them to even indirectly influence our judgment upon the Federal question to which we are confined, and we, therefore, put these subjects entirely out of view. Moreover, as, for the purpose of the Federal issue, we are concerned not with the mere form of proceeding by which the Federal right, if any, was denied, but alone have power to decide whether such right was denied, we do not inquire whether the New York court should preferably have admitted the record of the Connecticut divorce suit, and, after so admitting it, determine what effect it would give to it instead of excluding the record and thus refusing to give effect to the judgment. In order to decide whether the refusal of the court to admit in evidence the Connecticut decree denied. to that decree the efficacy to which it was entitled under the full faith and credit clause, we must first examine the judgment roll of the Connecticut cause in order to fix the precise circumstances under which the decree in that cause was rendered.

Without going into detail, it suffices to say that on the face of the Connecticut record it appeared that the husband, alleging that he had acquired a domicil in Connecticut, sued the wife in that State as a person whose residence was unknown, but whose last known place of residence was in the State of New York, at a place stated; and charged desertion by the wife and fraud on her part in procuring the marriage; and, further, it is shown that no service was made upon the wife except by publication and by mailing a copy of the petition to her. at her last known place of residence in the State of New York.

With the object of confining our attention to the real question arising from this condition of the Connecticut record, we state at the outset certain legal propositions irrevocably concluded by previous decisions of this court, and which are re-

quired to be borne in mind in analyzing the ultimate issue to be decided.

First. The requirement of the Constitution is not that some, but that full, faith and credit shall be given by States to the judicial decrees of other States. That is to say, where a decree rendered in one State is embraced by the full faith and credit clause that constitutional provision commands that the other States shall give to the decree the force and effect to which it was entitled in the State where rendered. *Harding* v. *Harding*, 198 U. S. 317.

Second. Where a personal judgment has been rendered in the courts of a State against a non-resident merely upon constructive service and, therefore, without acquiring jurisdiction over the person of the defendant, such judgment may not be enforced in another State in virtue of the full faith and credit clause. Indeed, a personal judgment so rendered is by operation of the due process clause of the Fourteenth Amendment void as against the non-resident, even in the State where rendered, and, therefore, such non-resident in virtue of rights granted by the Constitution of the United States may successfully resist even in the State where rendered, the enforcement of such a judgment. *Pennoyer* v. *Neff*, 95 U. S. 714. The facts in that case were these: Neff, who was a resident of a State other than Oregon, owned a tract of land in Oregon. Mitchell, a resident of Oregon, brought a suit in a court of that State upon a money demand against Neff. The Oregon statutes required, in the case of personal action against a non-resident, a publication of notice, calling upon the defendant to appear and defend, and also required the mailing to such defendant at his last known place of residence of a copy of the summons and complaint. Upon affidavit of the absence of Neff, and that he resided in the State of California, the exact place being unknown, the publication required by the statute was ordered and made, and judgment by default was entered against Neff. Upon this judgment execution was issued and real estate of Neff was sold and was ultimately acquired by

Pennoyer. Neff sued in the Circuit Court of the United States for the District of Oregon to recover the property, and the question presented was the validity in Oregon of the judgment there rendered against Neff. After the most elaborate consideration it was expressly decided that the judgment rendered in Oregon under the circumstances stated was void for want of jurisdiction and was repugnant to the due process clause of the Constitution of the United States. The ruling was based on the proposition that a court of one State could not acquire jurisdiction to render a personal judgment against a non-resident who did not appear by the mere publication of a summons, and that the want of power to acquire such jurisdiction by publication could not be aided by the fact that under the statutes of the State in which the suit against the non-resident was brought the sending of a copy of the summons and complaint to the post office address in another State of the defendant was required and complied with. The court said (p. 727):

"Process from the tribunals of one State cannot run into another State, and summon parties there domiciled to leave its territory and respond to proceedings against them. Publication of process or notice within the State where the tribunal sits cannot create any greater obligation upon the non-resident to appear. Process sent to him out of the State, and process published within it, are equally unavailing in proceedings to establish his personal liability."

And the doctrine thus stated but expressed a general principle expounded in previous decisions. *Bischoff* v. *Wethered*, 9 Wall. 812. In that case, speaking of a money judgment recovered in the Common Pleas of Westminster Hall, England, upon personal notice served in the city of Baltimore, Mr. Justice Bradley, speaking for the court, said (p. 814):

"It is enough to say [of this proceeding] that it was wholly without jurisdiction of the person, and whatever validity it may have in England, by virtue of statute law against property of the defendant there situate, it can have no validity here, even of a *prima facie* character. It is simply null."

Third. The principles, however, stated in the previous proposition are controlling only as to judgments *in personam* and do not relate to proceedings *in rem*. That is to say, in consequence of the authority which government possesses over things within its borders there is jurisdiction in a court of a State by a proceeding *in rem*, after the giving of reasonable opportunity to the owner to defend, to affect things within the jurisdiction of the court, even although jurisdiction is not directly acquired over the person of the owner of the thing. *Pennoyer* v. *Neff, supra.*

Fourth. The general rule stated in the second proposition is, moreover, limited by the inherent power which all governments must possess over the marriage relation, its formation and dissolution, as regards their own citizens. From this exception it results that where a court of one State, conformably to the laws of such State, or the State through its legislative department, has acted concerning the dissolution of the marriage tie, as to a citizen of that State, such action is binding in that State as to such citizen, and the validity of the judgment may not therein be questioned on the ground that the action of the State in dealing with its own citizen concerning the marriage relation was repugnant to the due process clause of the Constitution. *Maynard* v. *Hill*, 125 U. S. 190. In that case the facts were these: Maynard was married in Vermont, and the husband and wife removed to Ohio, from whence Maynard left his wife and family and went to California. Subsequently he acquired a domicil in the Territory of Washington. Being there so domiciled, an act of the legislature of the Territory was passed granting a divorce to the husband. Maynard continued to reside in Washington, and there remarried and died. The children of the former wife, claiming in right of their mother, sued in a court of the Territory of Washington to recover real estate situated in the Territory, and one of the issues for decision was the validity of the legislative divorce granted to the father. The statute was assailed as invalid, on the ground that Mrs.

Maynard had no notice and that she was not a resident of the Territory when the act was passed. From a decree of the Supreme Court of the Territory adverse to their claim the children brought the case to this court. The power of the territorial legislature, in the absence of restrictions in the organic act, to grant a divorce to a citizen of the Territory was, however, upheld, in view of the nature and extent of the authority which government possessed over the marriage relation. It was therefore decided that the courts of the Territory committed no error in giving effect within the Territory to the divorce in question. And as a corollary of the recognized power of a government thus to deal with its own citizen by a decree which would be operative within its own borders, irrespective of any extraterritorial efficacy, it follows that the right of another sovereignty exists, under principles of comity, to give to a decree so rendered such efficacy as to that government may seem to be justified by its conceptions of duty and public policy.

Fifth. It is no longer open to question that where husband and wife are domiciled in a State there exists jurisdiction in such State, for good cause, to enter a decree of divorce which will be entitled to enforcement in another State by virtue of the full faith and credit clause. It has, moreover, been decided that where a *bona fide* domicil has been acquired in a State by either of the parties to a marriage, and a suit is brought by the domiciled party in such State for a divorce, the courts of that State, if they acquire personal jurisdiction also of the other party, have authority to enter a decree of divorce, entitled to be enforced in every State by the full faith and credit clause. *Cheever* v. *Wilson,* 9 Wall. 108.

Sixth. Where the domicil of matrimony was in a particular State, and the husband abandons his wife and goes into another State in order to avoid his marital obligations, such other State to which the husband has wrongfully fled does not, in the nature of things, become a new domicil of matrimony, and, therefore, is not to be treated as the actual or constructive

domicil of the wife; hence, the place where the wife was domiciled when so abandoned constitutes her legal domicil until a new actual domicil be by her elsewhere acquired. This was clearly expressed in *Barber* v. *Barber*, 21 How. 582, where it was said (p. 595):

"The general rule is, that a voluntary separation will not give to the wife a different domiciliation in law from that of her husband. But if the husband, as is the fact in this case, abandons their domicil and his wife, to get rid of all those conjugal obligations which the marriage relation imposes upon him, neither giving to her the necessaries nor the comforts suitable to their condition and his fortune, and relinquishes altogether his marital control and protection, he yields up that power and authority over her which alone makes his domicil hers. . . ."

And the same doctrine was expressly upheld in *Cheever* v. *Wilson, supra*, where the court said (9 Wall. 123):

"It is insisted that Cheever never resided in Indiana; that the domicil of the husband is the wife's, and that she cannot have a different one from his. The converse of the latter proposition is so well settled that it would be idle to discuss it. The rule is that she may acquire a separate domicil whenever it is necessary or proper that she should do so. The right springs from the necessity of its exercise, and endures as long as the necessity continues."

Seventh. So also it is settled that where the domicil of a husband is in a particular State, and that State is also the domicil of matrimony, the courts of such State having jurisdiction over the husband may, in virtue of the duty of the wife to be at the matrimonial domicil, disregard an unjustifiable absence therefrom, and treat the wife as having her domicil in the State of the matrimonial domicil for the purpose of the dissolution of the marriage, and as a result have power to render a judgment dissolving the marriage which will be binding upon both parties, and will be entitled to recognition in all other States by virtue of the

full faith and credit clause.  *Atherton* v. *Atherton*, 181 U. S. 155.

Coming to apply these settled propositions to the case before us three things are beyond dispute: *a.* In view of the authority which government possesses over the marriage relation, no question can arise on this record concerning the right of the State of Connecticut within its borders to give effect to the decree of divorce rendered in favor of the husband by the courts of Connecticut, he being at the time when the decree was rendered domiciled in that State.  *b.* As New York was the domicil of the wife and the domicil of matrimony, from which the husband fled in disregard of his duty, it clearly results from the sixth proposition that the domicil of the wife continued in New York.  *c.* As then there can be no question that the wife was not constructively present in Connecticut by virtue of a matrimonial domicil in that State, and was not there individually domiciled and did not appear in the divorce cause, and was only constructively served with notice of the pendency of that action, it is apparent that the Connecticut court did not acquire jurisdiction over the wife within the fifth and seventh propositions; that is, did not acquire such jurisdiction by virtue of the domicil of the wife within the State or as the result of personal service upon her within its borders.

These subjects being thus eliminated, the case reduces itself to this: Whether the Connecticut court, in virtue alone of the domicil of the husband in that State, had jurisdiction to render a decree against the wife under the circumstances stated, which was entitled to be enforced in other States in and by virtue of the full faith and credit clause of the Constitution. In other words, the final question is whether to enforce in another jurisdiction the Connecticut decree would not be to enforce in one State, a personal judgment rendered in another State against a defendant over whom the court of the State rendering the judgment had not acquired jurisdiction.  Otherwise stated, the question is this: Is a proceeding for divorce

of such an exceptional character as not to come within the rule limiting the authority of a State to persons within its jurisdiction, but on the contrary, because of the power which government may exercise over the marriage relation, constitutes an exception to that rule, and is therefore embraced either within the letter or spirit of the doctrines stated in the third and fourth propositions?

Before reviewing the authorities relied on to establish that a divorce proceeding is of the exceptional nature indicated, we propose first to consider the reasons advanced to sustain the contention. In doing so, however, it must always be borne in mind that it is elementary that where the full faith and credit clause of the Constitution is invoked to compel the enforcement in one State of a decree rendered in another, the question of the jurisdiction of the court by which the decree was rendered is open to inquiry. And if there was no jurisdiction, either of the subject matter or of the person of the defendant, the courts of another State are not required, by virtue of the full faith and credit clause of the Constitution, to enforce such decree. *National Exchange Bank* v. *Wiley,* 195 U. S. 257, 269, and cases cited.

I. The wide scope of the authority which government possesses over the contract of marriage and its dissolution is the basis upon which it is argued that the domicil within one State of one party to the marriage gives to such a State jurisdiction to decree a dissolution of the marriage tie which will be obligatory in all the other States by force of the full faith and credit clause of the Constitution. But the deduction is destructive of the premise upon which it rests. This becomes clear when it is perceived that if one government, because of its authority over its own citizens has the right to dissolve the marriage tie as to the citizen of another jurisdiction, it must follow that no government possesses as to its own citizens, power over the marriage relation and its dissolution. For if it be that one government in virtue of its authority over marriage may dissolve the tie as to citizens of another

government, other governments would have a similar power, and hence the right of every government as to its own citizens might be rendered nugatory by the exercise of the power which every other government possessed.. To concretely illustrate: If the fact be that where persons are married in the State of New York either of the parties to the marriage may, in violation of the marital obligations, desert the other and go into the State of Connecticut, there acquiring a domicil, and procure a dissolution of the marriage which would be binding in the State of New York as to the party to the marriage there domiciled, it would follow that the power of the State of New York as to the dissolution of the marriage as to its domiciled citizen would be of no practical avail. And conversely the like result would follow if the marriage had been celebrated in Connecticut and desertion had been from that State to New York, and consequently the decree of divorce had been rendered in New York. Even a superficial analysis will make this clear. Under the rule contended for it would follow that the States whose laws were the most lax as to length of residence required for domicil, as to causes for divorce and to speed of procedure concerning divorce, would in effect dominate all the other States. In other words, any person who was married in one State and who wished to violate the marital obligations would be able, by following the lines of least resistance, to go into the State whose laws were the most lax, and there avail of them for the purpose of the severance of the marriage tie and the destruction of the rights of the other party to the marriage contract, to the overthrow of the laws and public policy of the other States. Thus the argument comes necessarily to this, that to preserve the lawful authority of all the States over marriage it is essential to decide that all the States have such authority only at the sufferance of the other States. And the considerations just stated serve to dispose of the argument that the contention relied on finds support in the ruling made in *Maynard* v. *Hill*, referred to in the fourth proposition, which was at the outset stated. For in that case

the sole question was the effect within the Territory of Washington of a legislative divorce granted in the Territory to a citizen thereof. The upholding of the divorce within the Territory was, therefore, but a recognition of the power of the territorial government, in virtue of its authority over marriage, to deal with a person domiciled within its jurisdiction. The case, therefore, did not concern the extraterritorial efficacy of the legislative divorce. In other words, whilst the ruling recognized the ample powers which government possesses over marriage as to one within its jurisdiction, it did not purport to hold that such ample powers might be exercised and enforced by virtue of the Constitution of the United States in another jurisdiction as to citizens of other States to whom the jurisdiction of the Territory did not extend.

The anomalous result which it is therefore apparent would arise from maintaining the proposition contended for is made more manifest by considering the instrument from which such result would be produced, that is, the full faith and credit clause of the Constitution. No one denies that the States, at the time of the adoption of the Constitution, possessed full power over the subject of marriage and divorce. No one, moreover, can deny that, prior to the adoption of the Constitution, the extent to which the States would recognize a divorce obtained in a foreign jurisdiction depended upon their conceptions of duty and comity. Besides, it must be conceded that the Constitution delegated no authority to the Government of the United States on the subject of marriage and divorce. Yet, if the proposition be maintained, it would follow that the destruction of the power of the States over the dissolution of marriage, as to their own citizens, would be brought about by the operation of the full faith and credit clause of the Constitution. That is to say, it would come to pass that, although the Constitution of the United States does not interfere with the authority of the States over marriage, nevertheless the full faith and credit clause of that instrument destroyed the authority of the States over the marriage rela-

tion. And as the Government of the United States has no delegated authority on the subject, that Government would be powerless to prevent the evil thus brought about by the full faith and credit clause. Thus neither the States nor the National Government would be able to exert that authority over the marriage tie possessed by every other civilized government. Yet more remarkable would be such result when it is borne in mind that, when the Constitution was adopted, nowhere, either in the mother country or on the continent of Europe, either in adjudged cases or in the treatises of authoritative writers, had the theory ever been upheld or been taught or even suggested that one government, solely because of the domicil within its borders of one of the parties to a marriage, had authority, without the actual or constructive presence of the other, to exert its authority by a dissolution of the marriage tie, which exertion of power it would be the duty of other States to respect as to those subject to their jurisdiction.

II. It is urged that the suit for divorce was a proceeding *in rem*, and, therefore, the Connecticut court had complete jurisdiction to enter a decree as to the *res*, entitled to be enforced in the State of New York. But here again the argument is contradictory. It rests upon the theory that jurisdiction in Connecticut depended upon the domicil of the person there suing and yet attributes to the decree resting upon the domicil of one of the parties alone a force and effect based upon the theory that a thing within the jurisdiction of Connecticut was the subject matter of the controversy. But putting this contradiction aside, what, may we ask, was the *res* in Connecticut? Certainly it cannot in reason be said that it was the cause of action or the mere presence of the person of the plaintiff within the jurisdiction. The only possible theory then upon which the proposition proceeds must be that the *res* in Connecticut, from which the jurisdiction is assumed to have arisen, was the marriage relation. But as the marriage was celebrated in New York between citizens

of that State, it must be admitted, under the hypothesis stated, that before the husband deserted the wife in New York, the *res* was in New York and not in Connecticut. As the husband, after wrongfully abandoning the wife in New York, never established a matrimonial domicil in Connecticut, it cannot be said that he took with him the marital relation from which he fled to Connecticut. Conceding, however, that he took with him to Connecticut so much of the marital relation as concerned his individual status, it cannot in reason be said that he did not leave in New York so much of the relation as pertained to the status of the wife. From any point of view, then, under the proposition referred to, if the marriage relation be treated as the *res*, it follows that it was divisible, and therefore there was a *res* in the State of New York and one in the State of Connecticut. Thus considered, it is clear that the power of one State did not extend to affecting the thing situated in another State. As illustrating this conception, we notice the case of *Mississippi & Missouri R. R. Co.* v. *Ward*, 2 Black, 485. The facts in that case were these: A bill was filed in a District Court of the United States for the District of Iowa to abate a nuisance alleged to have been occasioned by a bridge across the Mississippi river dividing the States of Illinois and Iowa. Under the assumption that the nuisance was occasioned by the operation of the bridge on the Illinois side, the court, after pointing out that the United States Circuit Court for the District of Iowa exercised the same jurisdiction that a state court of Iowa could exercise and no more, said (p. 494):

"The District Court had no power over the local object inflicting the injury; nor any jurisdiction to inquire of the facts, whether damage had been sustained, or how much. These facts are beyond the court's jurisdiction and powers of inquiry, and outside of the case."

Nor has the conclusive force of the view which we have stated been met by the suggestion that the *res* was indivisible, and therefore was wholly in Connecticut and wholly in New York,

for this amounts but to saying that the same thing can be at
one and the same time in different places. Further, the rea-
soning above expressed disposes of the contention that, as
the suit in Connecticut involved the status of the husband,
therefore the courts of that State had the power to deter-
mine the status of the non-resident wife by a decree which
had obligatory force outside of the State of Connecticut.
Here, again, the argument comes to this, that, because the
State of Connecticut had jurisdiction to fix the status of one
domiciled within its borders, that State also had the authority
to oust the State of New York of the power to fix the status
of a person who was undeniably subject to the jurisdiction
of that State.

III. It is urged that whilst marriage is in one aspect a con-
tract, it is nevertheless a contract in which society is deeply
interested and, therefore, government must have the power
to determine whether a marriage exists or to dissolve it, and
hence the Connecticut court had jurisdiction of the relation
and the right to dissolve it, not only as to its own citizen but
as to a citizen of New York who was not subject to the juris-
diction of the State of Connecticut. The proposition involves
in another form of statement the *non sequitur* which we have
previously pointed out; that is, that, because government
possesses power over marriage, therefore the existence of that
power must be rendered unavailing.

Nor is the contention aided by the proposition that because
it is impossible to conceive of the dissolution of the marriage
as to one of the parties in one jurisdiction without at the same
time saying that the marriage is dissolved as to both in every
other jurisdiction, therefore the Connecticut decree should
have obligatory effect in New York as to the citizen of that
State. For, again, by a change of form of statement, the
same contention which we have disposed of is reiterated. Be-
sides, the proposition presupposes that, because in the exer-
cise of its power over its own citizens, a State may determine
to dissolve the marriage tie by a decree which is efficacious

within its borders, therefore such decree is in all cases binding in every other jurisdiction. As we have pointed out at the outset, it does not follow that a State may not exert its power as to one within its jurisdiction simply because such exercise of authority may not be extended beyond its borders into the jurisdiction and authority of another State. The distinction was clearly pointed out in *Blackinton* v. *Blackinton*, 141 Massachusetts, 432. In that case the parties were married and lived in Massachusetts. The husband abandoned the wife without cause and became domiciled in New York. The wife remained at the matrimonial domicil in Massachusetts and instituted a proceeding to prohibit her husband from imposing any restraint upon her personal liberty and for separate maintenance. Service was made upon the husband in New York. The court, recognizing fully that under the circumstances disclosed the domicil of the husband was not the domicil of the wife, concluded that, under the statutes of Massachusetts, it had authority to grant the relief prayed, and was then brought to determine whether the decree ought to be made, in view of the fact that such decree might not have extraterritorial force. But this circumstance was held not to be controlling and the decree was awarded. The same doctrine was clearly expounded by the Privy Council, in an opinion delivered by Lord Watson, in the divorce case of *Le Mesurier* v. *Le Mesurier* (1895), A. C. 517, where it was said (p. 527):

"When the jurisdiction of the court is exercised according to the rules of international law, as in the case where the parties have their domicil within its forum, its decree dissolving their marriage ought to be respected by the tribunals of every civilized country. . . . On the other hand, a decree of divorce *a vinculo*, pronounced by a court whose jurisdiction is solely derived from some rule of municipal law peculiar to its forum, cannot, when it trenches upon the interests of any other country to whose tribunals the spouses were amenable, claim extraterritorial authority."

IV. The contention that if the power of one State to decree

a dissolution of a marriage which would be compulsory upon the other States be limited to cases where both parties are subject to the jurisdiction, the right to obtain a divorce could be so hampered and restricted as to be in effect impossible of exercise, is but to insist that in order to favor the dissolution of marriage and to cause its permanency to depend upon the mere caprice or wrong of the parties, there should not be applied to the right to obtain a divorce those fundamental principles which safeguard the exercise of the simplest rights. In other words, the argument but reproduces the fallacy already exposed, which is, that one State must be endowed with the attribute of destroying the authority of all the others concerning the dissolution of marriage in order to render such dissolution easy of procurement. But even if the true and controlling principles be for a moment put aside and mere considerations of inconvenience be looked at, it would follow that the preponderance of inconvenience would be against the contention that a State should have the power to exert its authority concerning the dissolution of marriage as to those not amenable to its jurisdiction. By the application of that rule each State is given the power of overshadowing the authority of all the other States, thus causing the marriage tie to be less protected than any other civil obligation, and this to be accomplished by destroying individual rights without a hearing and by tribunals having no jurisdiction. Further, the admission that jurisdiction in the courts of one State over one party alone was the test of the right to dissolve the marriage tie as to the other party although domiciled in another State, would at once render such test impossible of general application. In other words, the test, if admitted, would destroy itself. This follows, since if that test were the rule, each party to the marriage in one State would have a right to acquire a domicil in a different State and there institute proceedings for divorce. It would hence necessarily arise that domicil would be no longer the determinative criterion, but the mere race of diligence between the parties in seeking differ-

ent forums in other States or the celerity by which in such States judgments of divorce might be procured would have to be considered in order to decide which forum was controlling.

On the other hand, the denial of the power to enforce in another State a decree of divorce rendered against a person who was not subject to the jurisdiction of the State in which the decree was rendered obviates all the contradictions and inconveniences which are above indicated. It leaves uncurtailed the legitimate power of all the States over a subject peculiarly within their authority, and thus not only enables them to maintain their public policy but also to protect the individual rights of their citizens. It does not deprive a State of the power to render a decree of divorce susceptible of being enforced within its borders as to the person within the jurisdiction and does not debar other States from giving such effect to a judgment of that character as they may elect to do under mere principles of state comity. It causes the full faith and credit clause of the Constitution to operate upon decrees of divorce in the respective States just as that clause operates upon other rights, that is; it compels all the States to recognize and enforce a judgment of divorce rendered in other States where both parties were subject to the jurisdiction of the State in which the decree was rendered, and it enables the States rendering such decrees to take into view for the purpose of the exercise of their authority the existence of a matrimonial domicil from which the presence of a party not physically present within the borders of a State may be constructively found to exist.

Having thus disposed of the reasoning advanced to sustain the assertion that the courts of the State of New York were bound by the full faith and credit clause to give full effect to the Connecticut decree, we are brought to consider the authorities relied upon to support that proposition.

Whilst the continental and English authorities are not alluded to in the argument, it may be well, in the most summary way, to refer to them as a means of illustrating the

question for consideration. The extent of the power which independent sovereignties exercised over the dissolution of the marriage tie, as to their own citizens, gave rise, in the nature of things, to controversies concerning the extraterritorial effect to be given to a dissolution of such tie when made between citizens of one country by judicial tribunals of another country in which such citizens had become domiciled. We do not deem it essential, however, to consider the conflicting theories and divergent rules of public policy which were thus engendered. We are relieved of the necessity of entering upon such an inquiry, since it cannot be doubted that neither the practice nor the theories controlling in the countries on the continent lend the slightest sanction to the contention that a government, simply because one of the parties to a marriage was domiciled within its borders, where no matrimonial domicil ever existed, had power to render a decree dissolving a marriage which on principles of international law was entitled to obligatory extraterritorial effect as to the other party to the marriage, a citizen of another country. Wharton, Conf. Laws, 3d ed., v. 1, p. 441, sec. 209 and notes.

It cannot be doubted, also, that the courts of England decline to treat a foreign decree of divorce as having obligatory extraterritorial force when both parties to the marriage were not subject to the jurisdiction of the court which rendered the decree. *Shaw* v. *Gould*, L. R. 3 H. L. 55; *Harvey* v. *Farnie*, 8 App. Cas. 43. And, although it has been suggested in opinions of English judges treating of divorce questions that exceptional cases might arise which perhaps would justify a relaxation of the rigor of the presumption that the domicil of the husband was the domicil of the wife, per Lords Eldon and Redesdale, in *Tovey* v. *Lindsay*, 1 Dow, 133, 140; per Lord Westbury, in *Pitt* v. *Pitt*, 4 Macq. 627, 640; per Brett, L. J. in *Niboyet* v. *Niboyet*, 4 P. D. 1, 14; *Briggs* v. *Briggs*, 5 P. D. 163, 165; and per James and Cotton, L. JJ., in *Harvey* v. *Farnie*, 6 P. D. 47, 49, the courts of England, in cases where the jurisdiction was dependent upon domicil, have enforced

the presumption and treated the wife as being within the jurisdiction where the husband was legally domicled. But this conception was not a departure from the principle uniformly maintained, that, internationally considered, jurisdiction over both parties to a marriage was essential to the exercise of power to decree a divorce, but was simply a means of determining by a legal presumption whether both parties were within the jurisdiction. Of course the rigor of the English rule as to the domicil of the husband being the domicil of the wife is not controlling in this court, in view of the decisions to which we have previously referred, recognizing the right of the wife, for the fault of the husband, to acquire a separate domicil. *Barber* v. *Barber,* 21 How. 582; *Cheever* v. *Wilson,* 9 Wall. 108; *Atherton* v. *Atherton,* 181 U. S. 155.

And even in Scotland, where residence, as distinguished from domicil, was deemed to authorize the exercise of jurisdiction to grant-divorces, it was invariably recognized that the presence within the jurisdiction of both parties to the marriage was essential to authorize a decree in favor of the complainant. Wharton, Conf. Laws, sec. 215, v. 1, p. 447; per Lord Westbury, in *Shaw* v. *Gould,* L. R. 3 H. L. 88.

As respects the decisions of this court. We at once treat as inapposite, and therefore unnecessary to be here specially reviewed, those holding, *a,* that where the domicil of a plaintiff in a divorce cause is in the State where the suit was brought, and the defendant appears and defends, as both parties are before the court, there is power to render a decree of divorce which will be entitled in other States to recognition under the full faith and credit clause (*Cheever* v. *Wilson, supra*); *b,* that, as distinguished from legal domicil, mere residence within a particular State of the plaintiff in a divorce cause brought in a court of such State is not sufficient to confer jurisdiction upon such court to dissolve the marriage relation existing between the plaintiff and a non-resident defendant. *Andrews* v. *Andrews,* 188 U. S. 14; *Streitwolf* v. *Streitwolf,* 181 U. S. 179; *Bell* v. *Bell,* 181 U. S. 175. This brings us to again consider

a case heretofore referred to, principally relied upon as sus-
taining the contention that the domicil of one party alone is
sufficient to confer jurisdiction upon a judicial tribunal to
render a decree of divorce having extraterritorial effect, viz.,
*Atherton* v. *Atherton*, 181 U. S. 155. The decision in that case,
however, as we have previously said, was expressly placed upon
the ground of matrimonial domicil. This is apparent from
the following passage, which we excerpt from the opinion, at
page 171:

"This case does not involve the validity of a divorce granted,
on constructive service, by the court of a State in which only
one of the parties ever had a domicil; nor the question to what
extent the good faith of the domicil may be afterwards in-
quired into. In this case the divorce in Kentucky was by
the court of the State which had always been the undoubted
domicil of the husband, and which was the only matrimonial
domicil of the husband and wife. The single question to
be decided is the validity of that divorce, granted after such
notice had been given as was required by the statutes of
Kentucky."

The contention, therefore, that the reasoning of the opinion
demonstrates that the domicil of one of the parties alone was
contemplated as being sufficient to found jurisdiction, but in-
sists that the case decided a proposition which was excluded
in unmistakable language. But, moreover, it is clear, when
the facts which were involved in the *Atherton* case are taken
into view, that the case could not have been decided merely
upon the ground of the domicil of one of the parties, because
that consideration alone would have afforded no solution of
the problem which the case presented. The salient facts were
these: The husband lived in Kentucky, married a citizen of
New York, and the married couple took up their domicil at
the home of the husband in Kentucky, where they continued
to reside and where children were born to them. The wife
left the matrimonial domicil and went to New York. The
husband sued her in Kentucky for a divorce. Before the

Kentucky suit merged into a decree the wife, having a residence in New York sufficient, under ordinary circumstances, to constitute a domicil in that State, sued the husband in the courts of New York for a limited divorce. Thus the two suits, one by the husband against the wife and the other by the wife against the husband, were pending in the respective States at the same time. The husband obtained a decree in the Kentucky suit before the suit of the wife had been determined and pleaded such decree in the suit brought by the wife in New York. The New York court, however, refused to recognize the Kentucky decree and the case came here, and this court decided that the courts of New York were bound to give effect to the Kentucky decree by virtue of the full faith and credit clause. Under these conditions it is clear that the case could not have been disposed of on the mere ground of the individual domicil of the parties, since upon that hypothesis, even if the efficacy of the individual domicil had been admitted, no solution would have been thereby afforded of the problem which would have arisen for decision, that problem being which of the two courts wherein the conflicting proceedings were pending had the paramount right to enter a binding decree. Having disposed of the case upon the principle of matrimonial domicil, it cannot in reason be conceived that the court intended to express an opinion upon the soundness of the theory of individual and separate domicil which, isolatedly considered, was inadequate to dispose of, and was, therefore, irrelevant to, the question for decision.

It is contended that an overwhelming preponderance of the decisions of state courts enforce the doctrine that it is the duty of the States, by virtue of the full faith and credit clause, to give within their borders the full effect required by that clause to decrees of divorce rendered in other States, where there was jurisdiction alone by virtue of the domicil of one of the parties. Whilst we may not avoid the duty of interpreting for ourselves the Constitution of the United States, in view of the persuasive force that would result if an overwhelming

line of state decisions held the asserted doctrine, we come to consider that subject. To examine in detail the many decisions of state courts of last resort, most of which are referred to in the margin,[1] would expand this opinion to undue length. To avoid so doing, if possible, we propose to more particularly direct our attention to the cases in state courts which are specially relied on. In doing so we shall add cases in several of the States not particularly counted on in the argument. We shall do this for the purpose of evolving, if possible, from the state cases thus to be referred to, some classification typical of all the state decisions, hence enabling all the cases to which we do not specially refer to be brought within the appropriate class to which they pertain, without the necessity of reviewing them in detail. We shall not confine ourselves to the particular state decisions relied on, but shall consider such decisions in the light of the general rule obtaining in the particular State.

---

[1] Cases relating to the validity and extraterritorial effect of a decree of divorce rendered upon constructive notice:

*Turner* v. *Turner*, 44 Alabama, 437; *In re James Estate*, 99 California, 374; *Knowlton* v. *Knowlton*, 155 Illinois, 158; *Dunham* v. *Dunham*, 162 Illinois, 589; *Field* v. *Field*, 215 Illinois, 496; *Hood* v. *State*, 56 Indiana, 263, 270; *Hilbish* v. *Hattle*, 145 Indiana, 59; *Kline* v. *Kline*, 57 Iowa, 386; *Van Orsdal* v. *Van Orsdal*, 67 Iowa, 35; *Chapman* v. *Chapman*, 48 Kansas, 636; *Rodgers* v. *Rodgers*, 56 Kansas, 483; *Maguire* v. *Maguire*, 7 Dana, 181; *Hawkins* v. *Ragsdale*, 80 Kentucky, 353; *Edwards* v. *Green*, 9 La. Ann. 317; *Smith* v. *Smith*, 43 La. Ann. 1140; *Butler* v. *Washington*, 45 La. Ann. 279; *Harding* v. *Alden*, 9 Maine, 140; *Stilphen* v. *Stilphen*, 58 Maine, 508; *Stilphen* v. *Hondlette*, 60 Maine, 447; *Garner* v. *Garner*, 56 Maryland, 127; *Lyon* v. *Lyon*, 2 Gray, 367; *Wright* v. *Wright*, 24 Michigan, 180; *Van Inwagen* v. *Van Inwagen*, 86 Michigan, 333; *Thurston* v. *Thurston*, 58 Minnesota, 279; *Gould* v. *Crow*, 57 Missouri, 200; *Anthony* v. *Rice*, 110 Missouri, 223; *Smith* v. *Smith*, 19 Nebraska, 706; *Leith* v. *Leith*, 39 N. H. 20; *Doughty* v. *Doughty*, 28 N. J. Eq. 581; *Flower* v. *Flower*, 42 N. J. Eq. 152; *Felt* v. *Felt*, 59 N. J. Eq. 606; *Wallace* v. *Wallace*, 62 N. J. Eq. 509; *Lynde* v. *Lynde*, 162 N. Y. 405; *Winston* v. *Winston*, 165 N. Y. 553; *Irby* v. *Wilson*, 1 Dev. & Bat. Eq. (21 N. Car.) 568; *Harris* v. *Harris*, 115 N. Car. 587; *Bidwell* v. *Bidwell* (N. Car.), 52 S. E. Rep. 55, 58; *Cox* v. *Cox*, 19 Ohio St. 502; *Doerr* v. *Forsythe*, 50 Ohio St. 726; *Colvin* v. *Reed*, 55 Pa. St. 375; *Reel* v. *Elder*, 62 Pa. St. 308; *Ditson* v. *Ditson*, 4 R. I. 87; *McCreery* v. *Davis*, 44 S. Car. 195; *Thoms* v. *King*, 95 Tennessee, 60; *Prosser* v. *Warner*, 47 Vermont, 667, 673; *Cook* v. *Cook*, 56 Wisconsin, 195.

The cases specially relied on are *Thompson* v. *State*, 28 Alabama, 12; *Harding* v. *Alden*, 9 Maine, 140; *Ditson* v. *Ditson*, 4 R. I. 87; *Burlen* v. *Shannon*, 115 Massachusetts, 438; and *Felt* v. *Felt*, 59 N. J. Eq. 606, to which we shall add for the purposes above stated cases on the same subject decided in New York, Ohio, Wisconsin, Indiana and Missouri.

NEW YORK.—It is not questioned that the courts of New York are vested by statute with authority to render decrees of divorce where the plaintiff is domiciled within the State, which shall be operative in that State, even although the defendant is a non-resident and is proceeded against by constructive service.

*Borden* v. *Fitch*, 15 Johns. 121, and *Bradshaw* v. *Heath*, 13 Wend. 407, were decided, respectively, in the years 1818 and 1835. These cases, as declared by the Court of Appeals of New York in *People* v. *Baker*, 76 N. Y. 78, 82, upheld the principle that a court of another State could not dissolve the matrimonial relation of a citizen of New York, domiciled in New York, unless he was actually served with notice within the other State or voluntarily appeared in the cause. The doctrine that an action of divorce is one *inter partes* was thus clearly reiterated by Andrews, J., in *Jones* v. *Jones*, 108 N. Y. 415, 424:

"The contract of marriage cannot be annulled by judicial sanction any more than any other contract *inter partes*, without jurisdiction of the person of the defendant. The marriage relation is not a *res* within the State of the party invoking the jurisdiction of a court to dissolve it, so as to authorize the court to bind the absent party, a citizen of another jurisdiction, by substituted service or actual notice of the proceeding given without the jurisdiction of the court where the proceeding is pending."

That the principle referred to is still enforced by the New York court is shown by recent cases, viz., *Lynde* v. *Lynde*, 162 N. Y. 405; *Winston* v. *Winston*, 165 N. Y. 553, and the case at bar. And it is indubitable that under this doctrine the

courts of New York have invariably refused, as they have done in the case at bar, to treat a divorce rendered in another State, under the circumstances stated, as entitled to be enforced in New York by virtue of the full faith and credit clause of the Constitution of the United States; and, indeed, have refused generally to give effect to such decrees even by state comity.

MASSACHUSETTS.—*Barber* v. *Root*, 10 Massachusetts, 260; *Hanover* v. *Turner*, 14 Massachusetts, 227, and *Harteau* v. *Harteau*, 14 Pick. 181, were decided, respectively, in 1813, 1817 and 1833. In 1835 the legislature of Massachusetts, incorporated into the statutes of that State, following a section forbidding the recognition of divorces obtained in another jurisdiction in fraud of the laws of Massachusetts, a provision reading as follows: "In all other cases, a divorce decreed in another State or country, according to the law of the place, by a court having jurisdiction of the cause and of both of the parties, shall be valid and effectual in this State." And it may be observed that this section, when submitted to the legislature by the commissioners for revising the Massachusetts statutes, was accompanied by the following comment (Rept. Comrs., pt. II, p. 123): "This is founded on the rule established by the comity of all civilized nations; and is proposed merely that no doubt should arise on a question so interesting and important as this may sometimes be."

In *Lyon* v. *Lyon* (1854), 2 Gray, 367, the question was as to the validity in Massachusetts of a divorce decreed in Rhode Island in favor of one party to a marriage against the other who was domiciled in Massachusetts. The court refused to give extraterritorial effect to the Rhode Island decree. In the opinion by Chief Justice Shaw it was declared that the three cases which we have previously referred to sustained the doctrine, based upon general principles of law, that a decree of divorce rendered in another State without jurisdiction of both of the parties possessed no extraterritorial force.

In *Hood* v. *Hood* (1865), 11 Allen, 196, the controversy was

this: The parties were married in Massachusetts and, after a. residence in that State, moved together to Illinois. The wife left the domicil of the husband in Illinois and returned to Massachusetts. Thereafter, in Illinois, the husband sued the wife for a divorce on the ground of her desertion, obtained a ·decree, and married again. The case decided in Massachusetts was a suit brought in that State by the former wife against the former husband for divorce on the ground of adultery alleged to have been committed by him with the person whom he had married after the decree of divorce in Illinois had been. rendered. The Illinois decree was pleaded in bar. The question whether the Illinois decree should be given extraterritorial effect in Massachusetts. depended, under the rule announced in the previous cases, upon whether both the husband and wife were parties to the Illinois decree. For the purpose of the determination of this jurisdictional question it was held that it was necessary to ascertain whether the wife was justified, by the fault of the husband, in leaving him in Illinois and going back to Massachusetts. It was decided that if she was justified in leaving the husband, her legal domicil was in Massachusetts, and she was not a party to.the Illinois decree, and that if she was not justified in living separate from the husband, the ordinary rule being that the domicil of the husband was the domicil of the wife, she was domiciled in Illinois, and must be considered as subject to the jurisdiction of the Illinois court. Applying this legal principle to the facts in the case before it, the court held that as there was no evidence showing that the wife had justifiable cause for leaving her husband, the legal presumption that the domicil of the husband was the domicil of the wife prevailed, and that the Illinois decree was entitled to extraterritorial effect in Massachusetts, and bound the wife, because rendered by a court having jurisdiction over both parties.

In *Shaw* v.- *Shaw* (1867), 98 Massachusetts,· 158, the facts were these: The parties were married in Massachusetts, lived there and left together for the purpose of settling in Colorado.

On the journey, at Philadelphia, the wife was forced by the extreme cruelty of the husband to leave him. She returned to Massachusetts, while he went on to Colorado. Subsequently the wife sued in Massachusetts for a divorce from bed and board. The husband was brought in by substituted service and defaulted. The court, in the most explicit terms, recognized that a decree of divorce to have extraterritorial effect must be rendered with jurisdiction over both parties. It said (p. 159): "For the purposes of divorce the general rule of jurisprudence is that a divorce granted in the place of the domicil of both parties, and there valid, is good everywhere." The court came then to consider whether it could render a decree in Massachusetts in favor of the wife. This depended upon a statute of Massachusetts, which authorized the granting of a divorce where the cause for divorce occurred while the parties had lived together as husband and wife in Massachusetts, and where one of them lived in that State when the cause for divorce occurred. It was held that as at the time of the commission of the cruelty in Philadelphia charged against the husband the domicil of the parties in Massachusetts had not been lost, and as by that cruelty the wife was justified in returning to Massachusetts, and the subsequent acquisition of a new domicil by the husband in Colorado did not make such domicil that of the wife, there was jurisdiction, and the divorce was granted.

*Hood* v. *Hood* (1872), 110 Massachusetts, 463, was an attempt again to assail the validity of the Illinois decree of divorce which had been adjudged valid in 11 Allen, 196, because it was found that both the husband and wife had been parties to the decree. The Massachusetts decree so holding was therefore held to be *res judicata* as to all persons and to foreclose further inquiry into the validity of the Illinois decree of divorce.

In *Burlen* v. *Shannon* (1874), 115 Massachusetts, 438, the facts leading up to the controversy and those involved therein were as follows: Shannon and his wife lived together in Massa-

chusetts, where she left him. Without stopping to refer to prior legal controversies which arose between Shannon and his wife and between Shannon and Mrs. Burlen, which are irrelevant to be considered, it suffices to say that Mrs. Burlen sued Shannon in 1850 to hold him liable for necessary supplies furnished to the wife. Shannon resisted on the ground that the wife had been living apart from him without his fault or consent, and this defense was maintained. (3 Gray, 387.) Shannon went to Indiana in 1855 and took up his domicil in that State, where, in 1856, he obtained a decree of divorce upon constructive service. Subsequently, in Massachusetts, Mrs. Burlen again sued Shannon for necessaries furnished to the wife between February 22, 1860, and February 7, 1866. He pleaded the Indiana divorce, and the validity of the divorce was assailed by Mrs. Burlen on the ground that the wife had not been a party to the divorce cause, and therefore the Indiana decree had not extraterritorial effect in Massachusetts. The court, in effect, after reiterating the previous rulings and referring to the statute concerning the necessity for the presence of both parties within the jurisdiction where a decree for divorce of another State was sought to be given effect in Massachusetts, also reiterated the previous ruling that the wife might acquire a separate domicil from the husband if she lived separate from him for justifiable cause. The court was brought, therefore, to consider whether Mr. and Mrs. Shannon were both parties to the Indiana decree on the ground that the domicil of the husband was the domicil of the wife. The solution of this question depended, as it had depended in *Hood v. Hood*, 11 Allen, 196, upon whether the wife was absent from the husband because of his fault. On this subject it was decided that the previous judgment in favor of Shannon and against Mrs. Burlen in the prior action between the parties had conclusively determined between them that Mrs. Shannon was absent from her husband without his fault or consent, and, therefore, under the legal presumption that the domicil of the husband was the domicil of the wife, both

the husband and wife were parties to the Indiana decree and it was not subject to attack in Massachusetts. To cite, as has sometimes been done, the language of the opinion of the court referring to the previous judgment in the earlier action between Mrs. Burlen and Shannon as if that language referred to the Indiana decree of divorce, leading to the implication that that decree was held to be conclusive, even if only one of the parties was domiciled in the State where the decree was rendered, not only is a plain misconception, but is equivalent to asserting that the Massachusetts court had overruled its previous decisions and disregarded the spirit, if not the letter, of the state statute without the slightest intimation to that effect.

In *Cummington* v. *Belchertown*, 149 Massachusetts, 223, the facts were these: The parties to a marriage, celebrated in Massachusetts, lived together in that State until the wife was taken to a Massachusetts asylum for the insane, when the husband abandoned her, acquired a domicil in New York, there brought suit on the ground of fraud for the annulment of the marriage, and obtained a decree. The wife was only constructively served with process, did not appear, and was not represented. The Massachusetts court held, upon the authority of the *Blackington* case (141 Massachusetts, 432), to which we have already referred, that if the decree was to be recognized in Massachusetts, it could only be on grounds of comity. And in concluding its opinion the court said:

"Upon the ground, then, that the decree of the New York court attempts to annul a marriage in Massachusetts between Massachusetts citizens, and thus affect the legal status of the woman, who has remained domiciled in Massachusetts, and has never been within the jurisdiction of the New York court, and deprive her of the rights acquired by her marriage, and especially because it declares the marriage void for a reason on account of which by the Massachusetts law it cannot be avoided, we are of opinion that it should not be enforced here, and that

no principle of interstate comity requires that we should give it effect."

True it is the court reserved the question as to what effect might be given to a divorce if granted by a New York court under circumstances such as existed in that case. But, as a suit for a declaration of nullity and one for divorce are both but modes for determining judicially the status of the parties, it must in reason follow if jurisdiction over both is a prerequisite in the one class, it is of necessity also essential in the other.

MAINE.—In *Harding* v. *Alden* (1832), 9 Maine, 140, the facts were these: While living together in Maine a husband deserted his wife. He went to North Carolina, where he pretended to marry, and lived there with another woman. In the meantime the wife whom he had deserted took up her residence in Rhode Island, where she sued for a divorce on the ground of the adultery committed by the husband in North Carolina. The husband, who was notified in North Carolina, did not appear in the Rhode Island divorce cause. A decree of divorce was granted and the wife then remarried. The first husband, during the coverture, owned and alienated real estate in Maine, and a statute of that State provided that where a divorce was decreed for adultery by the husband, dower might be assigned to the divorced wife in the same manner as if the husband were dead. The divorced wife brought an action of dower in a court in Maine. The Rhode Island decree was held to possess validity in Maine and the statute relating to dower was decided not to be limited to divorces decreed within the State of Maine. Considering the opinion in its entirety, it is plain that the Rhode Island divorce was given recognition from considerations of right and justice and upon the ground of state comity. Thus, the court called attention to the fact that adultery was a cause for divorce in both States and that divorces were granted in Maine against non-residents; and, it was observed, that "there would be great inconvenience in holding" that divorces ought not to be recognized in other States when granted in the State where the *injured party*

resided against one who had established his domicil in another State and there committed adultery.

True it is in the course of the opinion reasoning was employed tending to show that the Rhode Island court might be considered to have had jurisdiction in the complete sense and it was intimated that the full faith and credit clause might have application, but the operation of the Rhode Island decree in Maine was by the decree of the Maine court expressly limited to the dissolution of the marriage (p. 151). How far removed this was from giving to the Rhode Island decree the benefit of the full faith and credit clause will, we think, be made clear by what follows.

*Harding* v. *Alden* was decided at the July term, 1832. Less than two years afterward, on March 5, 1834, Public Laws, 1834, c. 116, p. 119, the statute of Maine regulating divorces was supplemented by various provisions, one such being the following: "Sec. 2. Be it further enacted, That in all cases where one party has been or shall be divorced from the bonds of matrimony, the court granting the same may, upon application therefor, grant to the other party a like divorce, on such terms and conditions as the said court in the exercise of a sound discretion may judge reasonable." This provision was carried into the Revised Statutes of 1840, c. 89, sec. 2, and although repealed in 1850, in a general revision of the divorce laws, it was held that the legislature did not intend to deprive the courts of Maine of the power to entertain a suit for divorce brought by a person from whom the other party to a marriage had already been divorced, and that the courts of Maine still possessed power to exercise jurisdiction over such suits. *Stilphen* v. *Stilphen*, 58 Maine, 508. In the cited case, although a husband had already obtained an absolute divorce, a like divorce was granted to the wife, and the court allowed to her certain articles of personal property and the sum of $500. In overruling exceptions to the decree the appellate court adopted the theory that the second decree in no wise impugned the first, and was important only as enabling "the court to make

such ancillary decrees concerning the property as justice and humanity may require " (p. 517). In the course of the opinion the court said (p. 516):

"There is no class of cases in which the court is so liable to be imposed upon, and a decision obtained contrary to the truth, as *ex parte* divorce suits. The notice is often imperfect, so that the confession of guilt implied in the default is deceptive. And it is well known that witnesses, testifying in the presence of one of the parties, and in the absence of the other, will so alter and magnify the faults of the absent, and suppress everything that makes against the party present, that it is impossible to tell where the truth and real merits of the controversy are. When both parties are present, each is sure to put the other in the wrong; and *a fortiori* is this true, when one of the parties is permitted to testify in the absence of the other, as is now the case in divorce suits. We repeat, therefore, that there is no class of cases in which the court is so liable to be imposed upon; and it seems to us of the utmost importance that the court should be possessed of the power in some form to revise their decisions in this class of cases; otherwise, the grossest injustice is liable to be done."

In the light of this decision it cannot be assumed that the courts of Maine would give to a citizen of that State against whom a divorce had been obtained in a foreign jurisdiction, upon constructive service, a less degree of relief than they afford as to a decree rendered in Maine, both parties being present and bound by the decree.

RHODE ISLAND.—*Ditson* v. *Ditson* (1856), 4 R. I. 87, was a suit for divorce on the grounds of desertion, extreme cruelty, and non-support, brought by a wife domiciled in Rhode Island against the husband, who had never resided in Rhode Island, and whose whereabouts was unknown. The question was whether the Rhode Island court ought to exercise jurisdiction. The opinion was mainly devoted to refuting the reasoning employed by Chief Justice Shaw in his opinion in the case of *Lyon* v. *Lyon*, 2 Gray, 367, in which case, as we have previously

shown, the Massachusetts court refused to give effect to a Rhode Island decree of divorce where both parties were not within the jurisdiction. The Rhode Island court (in the *Ditson* case) in effect declared that it would not exercise jurisdiction to grant a divorce if it considered that a decree rendered by it would not be entitled to extraterritorial effect because of a lack of actual jurisdiction over the defendant. The court, however, proceeded to reason that a suit for divorce was in effect a proceeding *in rem*, and that jurisdiction over one of the parties to a suit for the dissolution of the marriage tie drew to the court jurisdiction of the other party, and thereby gave full and complete jurisdiction over the status of both parties, and upon that hypothesis decided that it would exercise jurisdiction, and that its decree dissolving the marriage would be entitled to the benefit of the full faith and credit clause of the Constitution and have binding efficacy in every other State.

NEW JERSEY.—Whilst the courts of New Jersey have exercised the power to grant a divorce from a non-resident defendant, upon constructive service, those courts have from the beginning applied to similar decrees of divorce granted in other States, when sought to be enforced in New Jersey against citizens of that State, a rule like the one prevailing in New York, that is, they decline to enforce them even upon the principles of comity. *Doughty* v. *Doughty*, 28 N. J. Eq. 581, 586; *Flower* v. *Flower*, 42 N. J. Eq. 152. Recently, however, it has been decided, *Felt* v. *Felt*, 59 N. J. Eq. 606, that where a decree of divorce was rendered in another State, and the complainant alone was subject to the jurisdiction of the court, but it was shown that the defendant had been personally served outside of the jurisdiction with notice of the pendency of the divorce proceeding and was afforded reasonable opportunity to make defense and did not avail of the opportunity, effect would be given to such decree in New Jersey, upon principles of comity, provided that the ground upon which the decree rested was one which the public policy of New Jersey

recognized as a sufficient cause for divorce. In *Wallace* v. *Wallace,* 62 N. J. Eq. 509, the subject is quite fully reviewed.

OHIO.—In *Cooper* v. *Cooper* (1836), 7 Ohio, 594, without citation of authority, a divorce granted in Indiana, from a resident of Ohio, upon constructive service, was held to bar an application for divorce and alimony in Ohio. In *Mansfield* v. *McIntyre* (1840), 10 Ohio, 27, despite a divorce obtained in Kentucky, by a husband, upon constructive service, the divorced wife was regarded in Ohio as the widow of her former husband after his decease, and as such widow entitled to dower.

In *Cox* v. *Cox,* 19 Ohio St. 502, decided at the December term, 1869, the facts were these: The husband deserted the wife in Ohio, went to Indiana and there obtained a divorce, upon constructive service. The wife remained in Ohio, and three years after the granting of the Indiana divorce to the husband she sued him for divorce and for alimony, alleging abandonment and gross neglect of duty. The trial court granted a divorce and alimony. The husband appealed, but as such an appeal, under the statutes of Ohio, did not affect the decree as to the divorce, the District Court considered only the question of alimony and rendered a new decree for alimony against the defendant. The case was then taken to the Supreme Court of the State. In that court attention was called to the fact that under the statutes of Ohio and the decisions of its courts jurisdiction might be exercised over non-residents in divorce cases, and reference was made to various authorities as tending to show that public policy required the recognition of the validity of such decrees in other States as to the dissolution of the marriage. After stating the facts, and observing that the wife was entitled under the laws of Ohio to either divorce or alimony, or both, at her election, and alluding to the Indiana decree, the court said (p. 512):

"The question, therefore, is, whether the *ex parte* decree can be made available, not merely to effect a dissolution of the marriage, but to defeat the right of the petitioner to the ali-

mony which the statute, upon the facts as they exist in regard to the husband's desertion, intended to provide for her.

"We think the decree ought not to have such effect.

"In arriving at this conclusion we make no distinction between a decree rendered, under the circumstances of this case, in a foreign, and one rendered in a domestic forum.

"In either case, to give to a decree thus obtained the effect claimed for it, would be to allow it to work a fraud upon the pecuniary rights of the wife. Such a result, in our opinion, is rendered necessary by no principle of comity or public policy —the only grounds upon which *ex parte* decrees of divorce are authorized and supported.

"It is not essential to the allowance of alimony that the marriage relation should subsist up to the time it is allowed. On appeal, alimony may be decreed by the District Court, notwithstanding the subsisting divorce pronounced by the Court of Common Pleas. It is true that the statute speaks of the allowance as being made to the wife. But the term 'wife' may be regarded as used to designate the person, and not the actual existing relation; or the petitioner may still be regarded as holding the relation of wife for the purpose of enforcing her claim to alimony."

The following cases were cited by the court as sustaining the right of the wife to maintain an independent proceeding for alimony, even after the husband had obtained a divorce: *Richardson* v. *Wilson*, 8 Yerger, 67; *Crane* v. *Meginnis*, 1 Gill & J. 463, and *Shotwell* v. *Shotwell*, 1 Sm. & M. Ch. R. 51.

In *Doerr* v. *Forsythe* (1893), 50 Ohio St. 726, an Indiana divorce granted to a husband, upon constructive service, was held not to bar the right of the wife to dower in lands in Ohio owned during coverture by the husband.

ALABAMA.—In *Thompson* v. *State* (1856), 28 Alabama, 12, the facts were these: Thompson deserted his family in Mississippi, went to Arkansas and there obtained a divorce upon constructive service. The wife returned to her father's home in Alabama, and, after the divorce, the husband also went to

Alabama, where he again married. He was prosecuted for and convicted of bigamy. The conviction was set side, however, upon the ground that the guilt or innocence of the accused depended upon the question as to whether he had a *bona fide* domicil in Arkansas during the pendency of the proceedings for divorce. *Harding* v. *Alden*, 9 Maine, 140, was cited as authority.

In a subsequent case, however, *Turner* v. *Turner* (1870), 44 Alabama, 437, the Supreme Court of Alabama strictly limited, as against a citizen of Alabama, the effect of a divorce rendered in another State upon constructive service. The parties were married in Alabama, where the husband deserted the wife, and located in Indiana, where he obtained a divorce upon constructive service. The wife remained in Alabama, and, after the granting of the divorce to the husband, she sued him in Alabama for a divorce and alimony. The husband pleaded the Indiana decree in bar. The trial court, however, held that the wife was entitled to maintain her suit and entered a decree for divorce and alimony. In affirming the decree the Supreme Court of Alabama, upon the authority of *Thompson* v. *State, supra,* said that the decree of divorce obtained by the husband in Indiana might protect him against prosecution for bigamy should he marry again in Alabama. Referring to that decree it further said (p. 450):

"But without stopping to inquire whether it was obtained by him by fraud, and therefore is vicious on that account or not, it certainly cannot affect the rights of the complainant, except her right in the husband as husband. If it is valid, it unmarries him and sets him free from his marital vows to her. He is no longer the complainant's husband. But it does not settle her right to alimony; it does not settle her right to dower in his lands, and her statutory right to distribution of his property in this State, in the event she should survive him, nor any other interest of a pecuniary character she may have against him. . . . . It is the duty of the State to protect its own citizens, within its own borders. This is the

natural compensation for allegiance. This high duty extends to all the pecuniary rights of the citizens, as well as to the rights of security of person. . . . No obligation of comity is paramount to this duty. Without a constant and effective exertion of it, citizenship would become a farce. . . . The wife is as much the citizen of the State as the husband, and is entitled to the protection of its laws to the same extent, so long as she remains within its jurisdiction. It would be a scandal to justice to imperil her, and sacrifice her most important and cherished rights upon a mere technicality; a technicality that often contradicts the truth. When her protection requires it, it would be cruelly unjust for the State, of her actual residence and domicil, to repudiate its own right of jurisdiction to give her aid. I therefore think that the better opinion is, that she has the right to file her bill here, and to all the relief that the court could give her, notwithstanding her husband might not be domiciled in this State at the commencement and during the whole pendency of her litigation with him. . . .

"Then, if the state courts have competent jurisdiction in such a case, as undoubtedly they have, they may go on and exercise that jurisdiction in the manner and to the extent prescribed by their own laws.

"Under the laws of this State, by the contract and consummation of a marriage, the wife, if she has no separate estate, becomes entitled to dower in the husband's lands, and a certain distributive interest in his personal estate, if she survives him, and to temporary and permanent alimony out of his estate upon a separation by divorce in her favor. These are rights that she cannot legally be deprived of without her consent or her fault. . . . If this were not so, then these important statutory provisions in favor of the wife would be repealed or rendered null by a foreign divorce, of which she had no notice and no knowledge, during its whole progress through the forms of a foreign court. To sue in her own domicil is necessary for the protection of the wife. It, therefore,

overrides the technical rule that the husband's domicil is also the domicil of the wife. . . . Here the testimony shows that the wife has no separate estate. The witnesses for the defendants say when she was married she 'brought nothing with her.' It also appears that during her connection with the defendant Matthew Turner, as his wife, she was a-chaste, industrious, economical, faithful, useful and obedient wife; and that the husband's property is very considerable; worth possibly not less than one hundred thousand dollars. It is also shown that his three children by a former marriage are already sufficiently provided for.

"Under such a state of facts the sum of thirty thousand dollars was not an unreasonable sum for permanent alimony, to be allowed to the wife, nor the sum of eight hundred dollars too large for temporary alimony. . . ."

INDIANA.—In *Tolen* v. *Tolen* (1831), 2 Blackf. 407, the facts were these: A wife, on being deserted in Kentucky, removed to and became domiciled in Indiana, and after a residence there of five years sued for a divorce from the non-resident husband. In an opinion of great length the court considered the question of its power to grant a divorce which would be *valid in Indiana,* and decided it had such power, but expressly reserved passing on the question whether the decree would have extraterritorial force.

In *Hood* v. *State* (1877), 56 Indiana, 263, 271, it was declared that as an *ex parte* divorce in favor of one domiciled within the jurisdiction of a State, and against a non-resident, although founded upon constructive service, was valid as to the plaintiff, "*public policy* demands that it should be held valid as to both parties."

· In *Hilbish* v. *Hattle* (1896), 145 Indiana, 59, certain sections of the Indiana Revised Statutes, wherein it was provided that the divorce of one party to a marriage should dissolve the contract as to both, and that a divorce decreed in another State by a court having jurisdiction of the cause should have full effect in Indiana, were held to be applicable to a decree of

divorce granted in another State, in favor of a husband, upon constructive service, and the same effect was given to the decree, as to the rights of the wife in the property of the husband in Indiana, as if the divorce had been rendered in Indiana.

MISSOURI.—In *Gould* v. *Crow*, 57 Missouri, 200, a decree of divorce regularly obtained by a husband in Indiana, on an order of publication, without personal service, was held to operate as a divorce in favor of the husband in Missouri, so as to prevent the wife from claiming her dower in lands in Missouri owned by the husband. *Harding* v. *Alden*, 9 Maine, 140, was relied upon as authority. A statute of Missouri, barring the claim of a wife for dower after divorce granted by reason of her fault, was held to apply to all divorces, whether obtained in Missouri or in other States, and whether obtained on personal service or by order of publication. The doctrine of *Gould* v. *Crow* was reaffirmed and applied in *Anthony* v. *Rice*, 110 Missouri, 223.

WISCONSIN.—In *Shafer* v. *Bushnell* (1869), 24 Wisconsin, 372, an *ex parte* divorce granted a wife in Minnesota upon constructive service of the defendant, a citizen of Minnesota, was held upon the grounds of comity to be conclusive in Wisconsin in respect to the status or domestic and social condition of the wife. The decree was held to bar an action for criminal intercourse against the person whom the complainant in the divorce suit married after the granting of the divorce.

In *Cook* v. *Cook* (1882), 56 Wisconsin, 195, however, in an elaborate opinion, an *ex parte* divorce obtained in Michigan upon constructive service merely, by a husband who had deserted his wife in Wisconsin, was held not to affect the status of the wife in Wisconsin nor to bar her from suing in Wisconsin for divorce, alimony, allowance and a division of the property of such husband situated within Wisconsin.

Deducing the law of the several States from the rulings of their courts of last resort which we have just reviewed and ignoring mere minor differences, the law of such States is embraced within one or the other of the following headings:

*a.* States where the power to decree a divorce is recognized, based upon the mere domicil of the plaintiff, although the decree when rendered will be but operative within the borders of the State, wholly irrespective of any force which may be given such decree in other States. Under this heading all of the States are embraced with the possible exception of Rhode Island.

*b.* States which decline, even upon principles of comity, to recognize and enforce as to their own citizens, within their own borders, decrees of divorce rendered in other States, when the court rendering the same had jurisdiction over only one of the parties. Under this heading is embraced Massachusetts, New Jersey (with the qualification made by the decision in 59 N. J. Eq. 606) and New York.

*c.* States which, whilst giving some effect to decrees of divorce rendered against its citizens, in other States where the court had jurisdiction of the plaintiff alone, either place the effect given to such decrees upon the principle of state comity alone, or make such limitations upon the effect given to such decree as indubitably establishes that the recognition given is a result merely of state comity. As the greater includes the less, this class of course embraces the cases under the previous heading. It also includes the States of Alabama, Maine, Ohio and Wisconsin.

*d.* Cases which, although not actually so deciding, yet lend themselves to the view that *ex parte* decrees of divorce rendered in other States would receive recognition by virtue of the due faith and credit clause. And this class embraces Missouri and Rhode Island.

Coming to consider, for the purpose of classification, the decided cases in other States than those previously reviewed, which have been called to our attention, the law of such States may be said to come under one or the other of the foregoing headings, as follows:

Proposition *a* embraces the law of all the States, since in the decision of no State is there an intimation expressing the ex-

ception found in the Rhode Island case which caused us to exclude that State from this classification.

Under proposition *b* comes the law of the States of Pennsylvania, Vermont and South Carolina. A line of decisions of the State of North Carolina would also cause us to embrace the law of that State within this classification, but for a doubt engendered in our minds as to the effect of the law of North Carolina on the subject, resulting from suggestions made by the North Carolina court in the opinion in the *Bidwell* case, 52 S. E. Rep. 55.

Proposition *c* embraces the law of Kansas, Louisiana, Maryland, Michigan, Minnesota, Nebraska and New Hampshire. And it is pertinent here to remark that in Michigan, 3 Comp. Laws Michigan (1897), par. 8621, c. 232, sec. 6, the obtaining of a divorce in another State from a citizen of Michigan is made cause for the granting of a divorce in Michigan to its citizens. A like provision is also in the statutes of Florida. Rev. Stat. Florida (1902), sec. 1480.

Under proposition *d* we embrace the remaining States, although as to several the classification may admit of doubt, viz., California, Illinois, Iowa, Kentucky and Tennessee.

It indubitably, therefore, follows from the special review we have made of cases in certain States, and the classification just made of the remaining state cases which were called to our attention and which we have previously cited in the margin, that the contention is without foundation, that such cases establish by an overwhelming preponderance that, by the law of the several States, decrees of divorce obtained in a State with jurisdiction alone of the plaintiff are, in virtue of the full faith and credit clause of the Constitution, entitled to be enforced in another State as against citizens of such State. Indeed the analysis and classification which we have made serves conclusively to demonstrate that the limited recognition which is given in most of the States to such *ex parte* decrees of divorce rendered in other States is wholly inconsistent with the theory that such limited recognition is based

upon the operation of the full faith and credit clause of the
Constitution of the United States, and on the contrary is con-
sistent only with the conception that such limited recognition
as is given is based upon state comity.   No clearer demon-
stration can be made of the accuracy of this statement than
the obvious consequence that if the full faith and credit clause
were now to be held applicable to the enforcement in the States
generally of decrees of divorce of the character of the one here
involved it would follow that the law of nearly all of the States
would be overthrown, and thus it would come to pass that the
decisions which were relied upon as establishing that the due
faith and credit clause applies to such decrees would be over-
ruled by the adoption of the proposition which it is insisted
those decisions maintain.   The only escape from this conclu-
sion would be to say that the law of the States as shown by
the decisions in question would remain unaffected by the
ruling of the full faith and credit clause because not repugnant
to that clause.   This would be, however, but to assert that
the full faith and credit clause required not that full faith and
credit be given in one State to the decrees of another State,
but that only a limited and restricted enforcement of a decree
of one State in another would fulfill the requirements of that
provision of the Constitution.   To so decide would be to de-
stroy the true import of the full faith and credit clause as pointed
out in the outset of this opinion.   Thus, in its ultimate aspect
the proposition relied upon reduces itself to this, either that
the settled law of most of the States of the Union as to di-
vorce decrees rendered in one State, where the court render-
ing the decree had jurisdiction only of the plaintiff, must be
held to be invalid, or that an important provision of the Con-
stitution of the United States must be shorn of its rightful
meaning.

.Without questioning the power of the State of Connecticut
to enforce within its own borders the decree of divorce which
is here in issue, and without intimating a doubt as to the power
of the State of New York to give to a decree of that character

rendered in Connecticut, within the borders of the State of
New York and as to its own citizens, such efficacy as it may
be entitled to in view of the public policy of that State, we
hold that the decree of the court of Connecticut rendered under
the circumstances stated was not entitled to obligatory en-
forcement in the State of New York by virtue of the full faith
and credit clause. It therefore follows that the court below
did not violate the full faith and credit clause of the Constitu-
tion in refusing to admit the Connecticut decree in evidence;
and its judgment is, therefore,

*Affirmed.*

Mr. Justice Brown, with whom were Mr. Justice Harlan,
Mr. Justice Brewer and Mr. Justice Holmes, dissenting.

Marriage between these parties was solemnized June 4, 1868.
They separated the same day, without a consummation, and
have never lived together since. No matrimonial domicil was
ever established in New York or elsewhere. Defendant left
New York soon after the wedding, drifted about the country
for several years, and finally settled in Connecticut in 1877;
remained there twelve years, during which time, and in 1881,
he obtained a divorce in the Superior Court of Litchfield County,
which he now sets up in defense of this action.

Plaintiff took no steps for twenty-six years to obtain a legal
separation or maintenance, when, in July, 1894, she applied to
the Superior Court of the State of New York for a summons by
publication. The defendant did not appear, and a decree was
rendered against him by default, separating the parties and
granting alimony of $1,500 a year. This decree appears to
have been abortive, so far as respects alimony at least, prob-
ably for lack of personal service on the defendant. Meantime,
and in 1891, defendant had inherited a considerable property
from his father.

This action was begun by a summons dated June 3, 1899,
thirty-one years after the marriage; was served upon the de-

fendant, who answered December 18, 1899, setting up, amongst other things, the decree of the Superior Court of Litchfield County, dissolving the marriage, the validity of which presents the only Federal question in this case.

1. This decree is attacked upon the ground that the Connecticut court acted without jurisdiction of the parties lawfully obtained. The record in that case shows that notice of the pendency of the petition was ordered to be published in a Litchfield paper, and also that a copy of the petition be sent to the respondent by mail, postage paid, at Tarrytown, New York. While there is no affidavit of the publication of the notice, there is a recital in the decree "that said complaint and writ have been duly served upon the defendant pursuant to an order of notice made thereon by the clerk of this court." This is sufficient *prima facie* evidence of the publication to entitle the record to be received. *Applegate* v. *Lexington &c. Mining Co.*, 117 U. S. 255, 269, wherein it was said by the court that "while it must be conceded that, in order to give the court jurisdiction over the persons of the defendants, all the steps pointed out by the statute to effect constructive service on non-residents were necessary, yet it does not follow that the evidence that the steps were taken must appear in the record, unless indeed the statute, expressly or by implication, requires it. . . . Therefore every presumption not inconsistent with the record is to be indulged in, in favor of its jurisdiction. . . . It is to be presumed that the court before making its decree took care to see that its order for constructive service, on which its right to make the decree depended, had been obeyed."

As the record was rejected for reasons appearing only upon its face, it is unnecessary to decide whether the recitals in the decree can be contradicted. Possibly the New York court might have assailed its validity by showing that, notwithstanding the recitals in the record, the court acquired no jurisdiction of the defendant by failure to comply with the order of the court with reference to the publication of notice in a news-

paper, or in sending a copy of the petition and complaint to the defendant by mail at Tarrytown, New York, the last known place of residence. The fact that the referee refused to admit the record, even as *prima facie* evidence, foreclosed any defense founded upon the actual failure to obtain jurisdiction over the defendant.

There is no doubt of the proposition that a decree of divorce may be lawfully obtained at the matrimonial domicil, notwithstanding that the defendant may have taken up his or her residence separate from the other party in another State, providing that the law of the domicil with respect to the personal service or publication be scrupulously observed. *Atherton* v. *Atherton*, 181 U. S. 155.

Doubtless the jurisdiction of the court granting the divorce may be inquired into, and if it appear that the plaintiff had not acquired a *bona fide* domicil in that State at the time of instituting proceedings, the decree is open to a collateral attack, *Bell* v. *Bell*, 181 U. S. 175, and a recital in the proceedings of a fact necessary to show jurisdiction may be contradicted. *Thompson* v. *Whitman*, 18 Wall. 457; *Streitwolf* v. *Streitwolf*, 181 U. S. 179; *Andrews* v. *Andrews*, 188 U. S. 14.

Subject to these conditions, each State has the right to regulate the marital *status* of its citizens, at least so far as to determine in what manner and by whom marriages may be solemnized, what shall be deemed the age of consent, what obligations are assumed, what property rights are created, for what causes divorces shall be granted, for what length of time the domicil of plaintiff shall have been acquired prior to the institution of the proceedings, and in what manner notice shall be given to the defendant. Nor is the power of the legislature in this connection ousted by the fact that the other party to the contract resides in another State, provided that in case of proceedings adverse to such party he or she shall be given such notice as due process of law requires. If such proceedings be *in rem* or *quasi in rem*, notice by publication is ordinarily deemed sufficient. But in case of actions *in per-*

*sonam* for the recovery of damages, personal service within the jurisdiction is vital to the proceedings. *Pennoyer* v. *Neff*, 95 U. S. 714; *Huling* v. *Kaw Valley Railway and Improvement Co.*, 130 U. S. 559.

By the laws of Connecticut of 1878, c. 71, p. 305, exclusive jurisdiction is given to the Superior Courts to grant divorces for several causes, among which are "willful desertion for three years with total neglect of duty," with a further provision (Gen. Stats. 4555), "that plaintiff shall have continuously resided in the State three years next before the date of the complaint," with certain exceptions not material to be noticed. A further provision, sec. 4553, that, "where the adverse party resides out of, or is absent from the State, or the whereabouts of the adverse party is unknown to the plaintiff, any judge or clerk of the Supreme Court of Errors, or the Superior Court, or any county commissioner, may make such order of notice as he may deem reasonable, and, such notice having been given and duly proved to the court; it may hear such complaint if it find that the defendant has actually received notice that the complaint is pending, and if it shall not appear that the defendant has had such notice, the court may hear such case, or, if it see cause, order such further notice to be given as it may deem reasonable, and continue the complaint until the order is complied with."

The complaint alleged a willful desertion of the plaintiff for more than three years, and the court found this to be the fact.

2. The case turns upon the question whether the Superior Court of Litchfield County gained jurisdiction by a residence of the plaintiff within the State for more than three years. The testimony also showed that the defendant had acquired a separate domicil in New York, and had been living there for about thirteen years.

In discussing this question two propositions may be admitted at once, and discarded as having no relevancy to the case:

1. That a judgment for damages in an action *in personam* is valid only when personal service has been made upon the

defendant within the jurisdiction of the court rendering the judgment. This disposes at once of the cases of *Pennoyer* v. *Neff*, 95 U. S. 714; of *Mississippi &c. R. R. Co.* v. *Ward*, 2 Black, 485, where an Iowa court had undertaken to abate a nuisance on the Illinois side of the Mississippi river; and of *Delaware &c. R. R. Co.* v. *Pennsylvania*, 198 U. S. 342, where a State had attempted to tax property having a permanent *situs* in another State.

2. That the courts of one State may not grant a divorce against an absent defendant to any person who has not acquired a *bona fide* domicil in that State. The same rule applies if he has removed thither solely for the purpose of acquiring a domicil and obtaining a divorce for a cause, which would have been insufficient in the State from which he removed. *Andrews* v. *Andrews*, 188 U. S. 14.

The jurisdiction of the Connecticut court in this case is shown, not by the facts as they appear in this case, but from the record in that case, and primarily from the petition, which under the practice in that State is incorporated with the summons. The allegations are:

"On the first day of January, 1869, the defendant willfully deserted the plaintiff, and has continued said desertion, with total neglect of all the duties of the marriage on her part to be performed to the date of this writ, being for more than three years, and during the plaintiff's residence in this State."

It is conceded that such desertion is good ground for a divorce in Connecticut, which may be granted to a plaintiff who has continuously resided in the State three years next before the date of the complaint. The complaint obviously made a case for divorce under the statute. The court found that the complaint and writ had been duly served on the defendant, pursuant to an order of notice made thereon by the clerk; that the allegations of the complaint had been sustained and a divorce was granted.

The case then resolves itself into the single question whether a divorce granted to a plaintiff lawfully domiciled within a

State as against a defendant domiciled in another State, who has been served by publication or letter only, is a valid defense to a suit by the latter for a separation and alimony.

Certain cases in this court tend strongly to support the proceedings in Connecticut. *Strader* v. *Graham,* 10 How. 82, was an action to recover the value of certain slaves carried into Ohio, a free State. The case was dismissed, as involving a question of the local law of Kentucky, the court remarking: "Every State has an undoubted right to determine the *status,* or domestic and social condition, of the persons domiciled within its territory, . . , and that it was exclusively in the power of Kentucky," (wherein the suit was brought) "to determine for itself whether their employment in another State should or should not make them free on their return."

In *Barber* v. *Barber,* 21 How. 582, a New York court decreed a separation and alimony to the wife. The husband removed to Wisconsin for the purpose of placing himself beyond the jurisdiction of the court which could enforce it, and there obtained a divorce *a vinculo* upon the ground of abandonment. The sole question raised by the record was: "Whether a wife divorced *a mensa et thoro* can acquire another domicilation in a State of this Union different from that of her husband, to entitle her, by her next friend, to sue him in a court of the United States, having equity jurisdiction, to recover from him alimony due, and which he refuses to make arrangement to pay; and whether a court of equity is not a proper tribunal for a remedy in such a case."

It was a suit to recover upon a judgment obtained in New York before proceedings instituted in Wisconsin, and was sustained. Obviously, the Wisconsin divorce was no defense, but its validity was not impugned.

*Cheever* v. *Wilson,* 9 Wall. 108, turned upon certain rights of property, and incidentally upon a divorce obtained in Indiana, in a suit in which the defendant appeared. The case, however, is valuable for two questions decided: First, that a decree of divorce, valid and effectual by the laws of the State

in which it was obtained, is valid and effectual in all other
States; second, that a wife may acquire a domicil different
from her husband's whenever it is necessary or proper that she
should have such a domicil; and on such a domicil, if the case
otherwise allow it, may institute proceedings for divorce, though
it be neither her husband's domicil nor have been the domicil
of the parties at the time of the marriage, or of the of-
fense.

Of course, it follows that if the wife may obtain a new dom-
icil her husband may do likewise, as was done in this case, after
the separation or abandonment had taken place. In deliver-
ing the opinion, Mr. Justice Swayne observed: "The decree
(of divorce) was valid and effectual, according to the law and
adjudications, in Indiana."

The Constitution and laws of the United States give the de-
cree the same effect elsewhere which it had in Indiana.  " 'If
a judgment is conclusive in the State where it is rendered, it
is equally conclusive everywhere' in the courts of the United
States."

In *Cheely* v. *Clayton*, 110 U. S. 701, a divorce obtained in a
territorial court, upon notice by publication insufficient under
the laws of the Territory, was held to be of no effect. The
court, however, observing: "If a wife is living apart from her
husband without sufficient cause, his domicil is in law her dom-
icil; and, in the absence of any proof of fraud or misconduct
on his part, a divorce obtained by him in the State of his dom-
icil, after reasonable notice to her, either by personal service
or by publication, in accordance with its laws, is valid, although
she never in fact resided in that State," citing *Burlen* v. *Shan-
non*, 115 Massachusetts, 438, and *Hunt* v. *Hunt*, 72 N. Y. 218.

In *Maynard* v. *Hill*, 125 U. S. 190, a legislative divorce was
upheld, and it was said that the fact that no cause existed for
the divorce, and that it was obtained without the knowledge
of the wife, cannot affect the validity of the act. It was fur-
ther said that though the conduct of the husband merited the
strongest reprobation, his abandonment of his wife, his loose

morals and shameless conduct could have no bearing upon the power of the assembly to pass the act.

Four recent decisions in this court are too important to pass unnoticed. In *Bell* v. *Bell*, 181 U. S. 175, and in *Streitwolf* v. *Streitwolf* (p. 179), it was held that a divorce obtained in a State in which neither party was domiciled, upon service by publication and in another State, was entitled to no faith and credit. These decisions were unanimous. And in *Andrews* v. *Andrews*, 188 U. S. 14, that a divorce obtained by one who had gone into another State to procure a divorce in fraud of the law of the domicil, was also invalid.

There remains the case of *Atherton* v. *Atherton*, 181 U. S. 155, a divorce obtained by a husband in Kentucky which had been the matrimonial domicil, though the wife had been absent from the State for several months, and apparently had attempted to acquire a new domicil in New York. The court took care to confine the case to the one point decided, namely, the validity of a divorce obtained at the matrimonial domicil. The court out of abundant caution expressly disclaimed that the case involved the validity of 'a divorce granted, on constructive service, by the court of a State in which only one of the parties ever had a domicil; nor the question to what extent the good faith of the domicil may be afterwards inquired into. " In this case, the divorce in Kentucky was by the court of the State, which had always been the undoubted domicil of the husband, and which was the only matrimonial domicil of the husband and wife. The single question to be decided is the validity of that divorce, granted after such notice had been given as was required by the statutes of Kentucky. "

While the *Atherton* case, as already stated, was confined to a divorce obtained at the matrimonial domicil, the cases cited by Mr. Justice Gray in his opinion relate to divorces obtained in a State which was the domicil only of the complaining party, and are practically the same as those cited by him in his opinion as Chief Justice of Massachusetts in *Burlen* v. *Shannon*, 115 Massachusetts, 438. In reading the two cases together one is

614 OCTOBER TERM, 1905.

BROWN, HARLAN, BREWER and HOLMES, JJ., dissenting. 201 U. S.

strongly impressed with the idea that in the *Atherton* case he had the former case in mind, and gave it such approval as the facts in the latter case would warrant. . Not only had the Court of Appeals of Kentucky decided that a wife residing in that State was entitled to obtain a decree of divorce against her husband who had left the State, *Rhyms* v. *Rhyms*, 7 Bush, 316; *Perzel* v. *Perzel*, 91 Kentucky, 634, but a number of cases from other States were cited holding to the same principle.

The opinion of the court in the present case admits that where the domicil of the husband is also the domicil of matrimony, the courts of that domicil may disregard an unjustifiable absence of the wife therefrom, and treat her as having her domicil there for the purpose of dissolving the marriage as to both parties, and that such dissolution would be recognized in all other States by virtue of the full faith and credit clause, citing to this effect *Atherton* v. *Atherton*, 181 U. S. 155, and, as a corollary therefrom, it is admitted that no question can arise concerning the right of the State of Connecticut to give effect to a decree of divorce rendered in favor of the husband while domiciled in that State. The question is, undoubtedly, as stated, whether the Connecticut court, in virtue of the domicil of the husband in that State, had jurisdiction to render a decree against the wife which was entitled to be enforced in other States, under the full faith and credit clause.

I deny, however, that the final question is whether this would be enforcing a *personal* judgment rendered in another State against the defendant, over whom the court rendering the judgment had not acquired jurisdiction. A proceeding for divorce is not *in personam* nor of an exceptional character, except so far as all proceedings *in rem* are governed by a different rule from that applicable to proceedings *in personam*. The validity of the latter class depends upon personal service of the defendant being obtained within the jurisdiction. The validity of the former depends upon the jurisdiction of the court over the *res*—in this case the marriage relation, the domicil of the plaintiff, and such jurisdiction over the defendant as is consonant

with the general principles of the constitution with regard to due process of law.

The propositions of the opinion, as we understand it, may be summarized as follows:

That, if one government by virtue of its authority over marriage, may dissolve the tie as to citizens of another government, that other government would have a similar power, and hence the right of every government over its own citizens might be rendered nugatory by the exercise of the power which every other government possesses. To illustrate by the present case: That, if the husband may desert his original domicil in New York, go to the State of Connecticut, acquire a domicil there and procure a divorce which would be binding in New York as to the party there domiciled, it would follow that the power of the State of New York as to the dissolution of the marriage, as to its domiciled citizen, would be of no practical avail. The opinion, however, fails to state the logical result of this proposition, viz., that no divorce would be possible in either State without a personal service upon the other within the State. If the husband, having his domicil in Connecticut, could not obtain a divorce against his wife domiciled in New York without a personal service, it follows that the wife domiciled in New York could not obtain a divorce against her husband in that State without a personal service there.

Undoubtedly the laws of some States are more liberal upon the subject of divorce than those of other States, but that does not affect the question. If the complaining party has acquired a domicil in the State in which he institutes proceedings, he is entitled to the benefit of the laws of that State with respect to the causes of divorce.

It is argued that, as the Constitution delegated no authority to the Government of the United States on the subject of marriage and divorce, yet, if the validity of the Connecticut divorce in this case be sustained, it follows that the destruction of the power of the States over the dissolution of marriage of its own citizens would be brought about by the full faith and credit

clause of the Constitution. But this was the very point de-
cided in the *Atherton* case, where a divorce obtained in Ken-
tucky by publication was held good in New York, as against
a proceeding by the wife for a divorce in that State. It is true
that the matrimonial domicil was in Kentucky. But this
does not affect the proposition asserted in the opinion, that the
decree did work a dissolution of the marriage, as to her, by the
operation of the full faith and credit clause of the Constitution,
and to that extent it did work a destruction of the power of
the State of New York over the dissolution of the marriage.
But the argument to that effect was not considered by this
court to be sound. It does undoubtedly follow that the *res*,
that is, the marriage relation, was as much in the State of New
York as it was in the State of Connecticut, but it does not fol-
low that the action of the Connecticut court with respect to
that *res* is not as much obligatory in New York as in Connec-
ticut. It is of the very essence of proceedings *in rem* that the
decree of a court with respect to the *res*, whether it be a vessel,
a tract of land or the marriage relation, is entitled to be re-
spected in every other State or country. The *status* fixed by
the adjudication in the State of the former is operative every-
where. Indeed, the proposition is so elementary as not to need
the citation of an authority.

The conclusion of the argument is that, the courts of New
York having the same power to decree a dissolution of the
marriage at the suit of the wife, that the courts of Connecticut
would have to make a similar decree at the suit of the husband,
it would become a mere race of diligence between the parties
in seeking different forums in other States; or the celerity by
which in such States judgments of divorce might be procured,
would have to be considered in order to decide which forum
was controlling. Granting this to be the case, does not every
plea of *res adjudicata* presuppose a prior judgment, and is it a
defense to such plea that such judgment was obtained by su-
periority in a race of diligence? The whole doctrine is founded,
if not upon the doctrine of superior diligence, at least upon the

theory of a prior judgment, which fixes irrevocably the rights of the parties, whenever and wherever these rights may come in question.   Nor is the rule less operative where suits are in different States and the laws applicable to the questions therein arising are different.   To illustrate: Suppose a note and mortgage were given for usurious interest, and the mortgage was sought to be foreclosed in a State where, by statute, usury would invalidate both principal and interest, and a decree were obtained dismissing the bill, can it be doubted that if the note were sued upon in another State where usury did not invalidate the security the plea of *res adjudicata* would be sustained upon the ground that the rights of the parties had been definitely fixed in the suit for the foreclosure of the mortgage?   It seems to me the same rule applies in this case.   So long as no proceedings are taken, the marriage would remain valid both by the laws of Connecticut and of New York.   But if a suit be instituted by either party, by the husband for a divorce or by the wife for a maintenance, and the question of marriage or no marriage be made an issue, and decided in the case first brought, that decree is forever binding upon both parties.   Had the wife in this case brought suit to dissolve the marriage, or for a maintenance in affirmation of the marriage, the decree of the court in New York would have been as binding upon the court in Connecticut as the decree obtained in Connecticut ought to be upon the wife in New York.

The cases in the state courts, with a few exceptions, hereinafter noted, overwhelmingly preponderate in holding that where the plaintiff has acquired a *bona fide* domicil in a particular State he may lawfully appeal to the courts of that State for a dissolution of the marriage tie, for the causes permitted by its statutes, and may call in the non-resident defendant by publication.   To abstract all these cases would unduly prolong this opinion.

In many of them the full faith and credit clause of the Constitution does not seem to have been called to the attention of the court, and the case was disposed of upon principles of com-

ity, which give to the court a certain latitude of discretion, whereas, under the full faith and credit clause, the consideration given to a decree in the State where it is rendered is obligatory in every other State.

One of the earliest of these cases is that of *Harding* v. *Alden,* 9 Maine, 140, in which the parties separated, the husband going to North Carolina and the wife to Rhode Island. She began proceedings there, which culminated in a divorce for adultery committed in North Carolina, the husband having been personally cited to appear, but refusing to do so. The divorce was held to be valid, the court observing that "the protection of innocent parties and the purity of public morals require that divorces lawfully pronounced in one jurisdiction, and the new relations thereupon formed, should be recognized as operative and binding everywhere," in the absence of fraud or collusion. The ruling was that the wife was entitled to dower in lands of which the husband was seized during coverture, the statute expressly giving the right where divorce was decreed for the cause of adultery, as if the husband were dead.

In *Barber* v. *Root,* 10 Massachusetts, 260, the parties originally domiciled in Massachusetts removed to Vermont, and established a permanent domicil there. The court, while repudiating the idea that a divorce could be granted to a person who was not domiciled in Vermont, held the divorce to be good.

In *Hood* v. *Hood,* 11 Allen, 196, a divorce obtained in Illinois by the husband for desertion, upon notice by publication in a newspaper, was held to be valid as against the wife, although she was then living in Massachusetts under an agreement on his part to pay her a certain sum per week; and although she had no actual notice of the proceedings, and was not in Illinois during the pendency thereof. It was further held that she could not, in a libel for divorce brought by her in Massachusetts, offer evidence that the Illinois decree was obtained by fraud, and upon facts which would not entitle her to a divorce in Massachusetts. In a subsequent case between the same par-

ties, 110 Massachusetts, 463, the court again decided that the Illinois decree could not be impeached, and that she was not entitled to dower in any lands of which the husband was seized during the coverture. ·

The whole subject was very carefully considered in *Burlen* v. *Shannon,* 115 Massachusetts, 438, which was an- action against the husband for board furnished the wife. The husband, whose wife was living apart from him without justifiable cause, removed to Indiana, acquired a domicil there and obtained a decree of divorce by publication, and by leaving a summons at her abode in Massachusetts. The divorce was held to be valid in Massachusetts as to all persons, although the wife had never been in Indiana, never appeared in the suit there, had no knowledge that her husband contemplated going to that State, or had left Massachusetts, until after he had filed his libel for divorce. The authorities are reviewed by Mr. Justice Gray, and the conclusion reached that the divorce in Indiana was valid.

*Cummington* v. *Belchertown,* 149 Massachusetts, 223, was an action to recover expenses incurred by the plaintiff for the support of an insane pauper. The husband had removed to another State and procured a decree annulling the marriage on the ground of fraud in concealing from him the fact of insanity before their marriage. Notice of the proceedings was served upon her, but she was not represented, and it was held that the decree was insufficient to annul her marriage in Massachusetts. It was held, under the familiar rule that the jurisdiction of the foreign court may be inquired into, that the wife, when the proceedings were commenced and concluded was utterly insane, and that the record of the New York courts showed her to have been so, and that no guardian was appointed. The case was disposed of as one over which the New York court had acquired no jurisdiction. It does not qualify in any way the previous case of *Burlen* v. *Shannon.*

The case of *Ditson* v. *Ditson,* 4 R. I. 87, is directly in point, and I understand it to be so admitted. It was held that a

divorce in Rhode Island on the ground of desertion was valid, though the husband had never been within the jurisdiction of Rhode Island, and only constructive notice of the pendency of the petition had been given him.

The rule in Kentucky is settled in *Rhyms* v. *Rhyms,* 7 Bush. 316, in which a wife proceeded against her husband as a nonresident by a warning order, and it was held that the court had jurisdiction to grant her a divorce, Chief Justice Robertson remarking: "It would be a reproach to our legislation if a faithless husband in Kentucky could by leaving the State deprive his abandoned wife of the power to obtain a divorce at home." In *Hawkins* v. *Ragsdale,* 80 Kentucky, 353, it was held that a divorce obtained by the husband in Indiana by constructive service determined the *status* of the party in Kentucky, and that under the statutes of that State it barred all claim to curtesy or dower in Kentucky lands. To the same effect is *Perzel* v. *Perzel,* 91 Kentucky, 634.

The law of California is settled in *In re Newman,* 75 California, 213, to the effect that a suit for divorce, so far as it affects the *status* of the parties and the custody of their children, is a proceeding *in rem,* and service by publication on a nonresident defendant is good. This ruling was repeated in *In re James,* 99 California, 374, where it is declared that such decree is equally valid in other States.

Nowhere is the rule more strongly asserted than in Tennessee, where a decree obtained in Illinois by publication was sustained in *Thoms* v. *King,* 95 Tennessee, 60, and where it seems to have been held that the decree could not be impeached, even by showing the absence of necessary residence.

In *Cooper* v. *Cooper,* 7 Ohio St. 594, it was held that a divorce granted in Indiana precluded an application for a divorce and alimony in Ohio. In *Cox* v. *Cox,* 19 Ohio St. 502, the validity of a foreign decree of divorce obtained by constructive service, except so far as regarded the question of alimony, was sustained. The same ruling was made in *Doerr* v. *Forsythe,* 50 Ohio St. 726, holding that while the Indiana divorce was good,

it did not affect the property rights of the wife in the State of Ohio.

The rule in Missouri is stated in *Gould* v. *Crow,* 57 Missouri, 200, that a divorce regularly obtained by the husband in Indiana on an order of publication operates as a divorce in his favor in Missouri, so as to prevent his wife from claiming dower in lands owned by him in that State. The decree so pronounced is a judgment *in rem* and is valid everywhere under the Constitution and laws of the United States. A like ruling was made in *Anthony* v. *Rice,* 110 Missouri, 223.

The law in Kansas is settled in *Rodgers* v. *Rodgers,* 56 Kansas, 483, to the effect that the courts of a sister State may dissolve a marriage relation between a husband domiciled there and a wife domiciled in Kansas, by publication, although unknown to her; but that such courts have no power to settle the title of lands in Kansas or control the custody of children residing there. But it was also decided in *Chapman* v. *Chapman,* 48 Kansas, 636, that a wife having obtained a divorce in Ohio upon service by publication, was not entitled to dower in lands in Kansas fraudulently conveyed by her husband in fraud of her or others.

In *Smith* v. *Smith,* 43 La. Ann. 1140, it is held that a wife may acquire a separate domicil from that of her husband where his conduct has been such as to furnish ground for divorce, and her marriage *status* becomes subject to the jurisdiction of that domicil, and that the courts thereof may grant a divorce upon actual or constructive notice. The rights of the Louisiana courts to decree a divorce against an absentee by means of substituted service is again affirmed in *Butler* v. *Washington,* 45 La. Ann. 279.

The law of Wisconsin is the same. *Shafer* v. *Bushnell,* 24 Wisconsin, 372; *Cook* v. *Cook,* 56 Wisconsin, 195, though in the latter case the right of the wife to an interest in her husband's lands in Wisconsin was preserved.

In *Thompson* v. *State,* 28 Alabama, 12, the right of the husband to emigrate and acquire a new domicil and procure a

divorce upon publication in the State of his domicil, was also affirmed. See also *Turner* v. *Turner*, 44 Alabama, 437. In the latter case it is indicated that a foreign divorce did not settle the rights of the wife to dower in his lands, or any other interests of a pecuniary character.

In *Kline* v. *Kline*, 57 Iowa, 386, a decree rendered in another State on service by publication was recognized, except so far as it attempted to fix the custody of the minor children. In *Van Orsdal* v. *Van Orsdal*, 67 Iowa, 35, the property rights of the wife were recognized, but this right was limited to property within the State, and which the husband owned at the time of the divorce, and not to what he subsequently acquired. In this case it was said: "The divorce was granted . . . . in May, 1880. In November, 1881, the defendant's father died in this State, possessed of certain property which the defendant inherited. Now, while it may be that the plaintiff might be entitled to alimony if the defendant had owned property in the State at the time the divorce was procured in Nebraska, she cannot be so entitled because he has subsequently acquired property. The plaintiff, if entitled to alimony, was so entitled at the time the divorce was granted. The relation of husband and wife then ceased, and neither party is entitled to any share or interest in property which may be subsequently acquired."

In Indiana the right of a wife domiciled there to a divorce against the husband who never resided in that State, and upon whom service was only obtained by publication, is recognized in *Tolen* v. *Tolen*, 2 Blackford, 407; *Hood* v. *State*, 56 Indiana, 263, and in *Hilbish* v. *Hattle*, 145 Indiana, 59, it was held that the wife had no rights in his property by virtue of her marriage relations with the husband, though the court did not in the divorce proceedings adjudicate the property rights of the parties.

In *Garner* v. *Garner*, 56 Maryland, 127, the power to grant a divorce against a non-resident, upon whom process had not been served, was recognized, but the right to a decree that the non-resident should not marry again was denied.

201 U. S.  Brown, Harlan, Brewer and Holmes, JJ., dissenting.

In *Thurston* v. *Thurston*, 58 Minnesota, 279, the divorce was recognized, though process was served outside of the State.. But it was held that the question of alimony was not *res adjudicata* by reason of the judgment. The wife was allowed alimony out of property in Minnesota.

The validity of foreign divorces obtained without personal service is recognized in Illinois, in *Knowlton* v. *Knowlton*, 155 Illinois, 158, and in *Dunham* v. *Dunham*, 162 Illinois, 589.

The law in New Jersey appeared at one time to favor the contention of the wife in this case. The gist of the decisions seemed to be that a foreign decree is enforceable in another State only on the ground of comity. This was indicated in *Doughty* v. *Doughty*, 28 N. J. Eq. 581, though the decree in that case was held to have been obtained by fraud. It was admitted that the decree obtained by the husband in Illinois was lawful and binding there, but it was held that it did not change the *status* of the wife in New Jersey, her citizenship there being admitted. The case was properly decided on the ground that the husband went to Illinois to obtain a divorce, and acquired no *bona fide* domicil there. The same rule was recognized in *Flower* v. *Flower*, 42 N. J. Eq. 152. These cases, however, seem to have been overruled in *Felt* v. *Felt*, 59 N. J. Eq. 606, where it was held that the domicil of the complainant in a foreign State was sufficient to give jurisdiction, notwithstanding the defendant had not been served with process there. The court remarked in this case: "A condition of the law which makes the intercourse of a man and woman either legitimate or adulterous as they happen to be within. the limits of one State or another is not to be tolerated any further than is plainly required by public policy." This case evidently puts New Jersey in line with the vast majority of other States.

The cases of New York upon this subject are numerous and perhaps not wholly reconcilable, but we think that the law, as summarized in the last case of *Winston* v. *Winston*, 165 N. Y. 553, is adverse to the validity of a divorce obtained in another State without service of process within the jurisdiction. Of

the same tenor are the cases in Pennsylvania: *Colvin* v. *Reed*, 55 Pa. St. 375; *Reel* v. *Elder*, 62 Pa. St. 308. North Carolina: *Irby* v. *Wilson*, 1 Dev. & Bat. Eq. 568; *Harris* v. *Harris*, 115 N. Car. 587. South Carolina: *McCreery* v. *Davis*, 44 S. Car. 195.

The law in this country then may be summarized as follows: In Maine, Massachusetts, Rhode Island, Kentucky, California, Tennessee, Ohio, Missouri, Kansas, Louisiana, Wisconsin, Alabama, Iowa, Indiana, Maryland, Minnesota, Illinois and New Jersey, the validity of a divorce obtained in another State by a party there domiciled in a proceeding where constructive service upon the defendant only is obtained, is fully recognized. In Ohio, Iowa and Minnesota, and perhaps also Louisiana and Alabama, her right to alimony and to dower is preserved. But the very cases which limit the effect of the divorce, so far as property rights are concerned, restrict such rights to dower in lands of which the husband was seized during coverture, and inferentially at least to alimony from such property. It is also limited to property within the State where suit is brought. That her rights in her husband's property should extend to property acquired by him long after the divorce is nowhere indicated.

The only States in which it is held that a party domiciled in another State may not obtain a divorce there by constructive service are New York, Pennsylvania, North and South Carolina.

A proceeding for divorce is a suit *in rem*, with which is often incorporated a suit *in personam*. The *res* is aptly stated in *Ellis* v. *Martin*, 53 Missouri, 575, as "the *status* of the plaintiff *in relation to the defendant* to be acted on by the court. This relation being before the court in the person of the plaintiff, the court acts on it, and dissolves it by a judgment of divorce." The fact subsequently ascertained, that it may have been procured by fraud or false testimony, is wholly beside the question, as we shall hereafter show. The fact that the husband changed his domicil to another State, after the cause of action

arose, is also immaterial. The *status* of the husband in this case was irrevocably fixed by the decree. It is unnecessary to consider how far it affected the *status* of the wife in New York, which, in respect to other questions, may be subject to the local law; but her relations as against her husband are controlled by the decree which fixed *his status*. Indeed, it would be a reproach to our jurisprudence if an injured party residing in one State could not obtain a decree from the other party, without pursuing the offending party into another and distent State, where he or she may have chosen to establish a domicil.

In this case the referee reported that the defendant abandoned the plaintiff without cause or justification. An exception was taken to this report, and the testimony was sent up, which shows that the parties separated on the day of their marriage and have never lived together since. The testimony leaves it doubtful whether it was a case of abandonment or of separation by mutual consent. It does, however, show that plaintiff took no steps to assert her marital rights for twenty-six years after her marriage. Her husband having in the meantime inherited a large amount of property from his father, she began suit for divorce *a mensa et thoro* and an allowance of alimony. This suit, however, was ineffectual so far as respects the alimony, as no personal service was obtained. She waited again for five years and began this proceeding both for a separation, which she had already obtained, and for alimony.

We think the defendant may lawfully reply thus: "You are pursuing me as your husband for a separation *de jure* which has existed for thirty-one years *de facto*, and since 1894 *de jure*, and for an alimony which is obviously the sole object of your proceeding. Your only claim against me is as your husband. I am not your husband. Twenty-three years ago the Superior Court of Litchfield County, Connecticut, in which State I had an actual and *bona fide* domicil, and which had had sole jurisdiction over my marital *status* for twelve years, liberated me from the bonds of matrimony and pronounced me a free man. In the meantime I have married another woman, and if your

position be a sound one, I am, at least in the State of New York, a bigamist, and my wife an adulteress." It is difficult to conceive of a case calling more loudly for the application of the general doctrine.

As no question is made as to the validity of the Connecticut decree and its legal effect in that State, and as this court has repeatedly decided that, under the full faith and credit clause of the Constitution, a judgment conclusive in the State where it is rendered is equally conclusive everywhere in the courts of the United States, *Cheever* v. *Wilson*, 9 Wall. 108; *Mills* v. *Duryee*, 7 Cranch, 481; *D'Arcy* v. *Ketchum*, 11 How. 165, I do not understand how this decree can be denied the same effect in New York that it has in Connecticut without disregarding the constitutional provision in question. The result is that the husband, freed from the bonds of matrimony in Connecticut, was at liberty to contract another marriage there, while the wife cannot even at this late day contract another marriage in New York without being guilty of adultery.

3. It is insisted, however, that the decree of the Connecticut court was obtained by the fraud of Haddock, in stating in his complaint that his wife had deserted him, when, in the present case, it appears from his own testimony that he, in fact, abandoned and refused to live with her, or that they separated by mutual consent.

The evidence upon which the Connecticut decree was granted does not appear in the record, and it is possible that the case was made out by the testimony of other witnesses. But, however that may be, this decree cannot be impeached by evidence that it was obtained by false testimony, even though it be testimony of the plaintiff in that proceeding and the defendant in this. *Hood* v. *Hood*, 11 Allen, 196, in which it was held that "both parties had their domicil in that State [Illinois], and were subject to the jurisdiction of the court in which the libel was filed. . . . But the fact of desertion [by the wife] was conclusively settled between the parties by the judgment in Illinois; and it is not now competent for the libellant to

201 U. S.   BROWN, HARLAN, BREWER, and HOLMES, JJ., dissenting.

contradict that judgment."   See same case, 110 Massachusetts, 463.

The rule is well settled that while a judgment or decree may sometimes be impeached for fraud, it can only be for a fraud extrinsic to the cause—as, that the judgment was collusively obtained to defraud some other person, and that it cannot be impeached by either of the parties thereto by reason of false testimony given at the time, or which must have been given to establish the plaintiff's case, or even by perjury of one of the parties thereto.   Granting that the testimony shows the absence of good faith, and even perjury, on the part of the husband in the Connecticut suit, the decree cannot be opened for that reason, or for any reason, which would not logically involve a reëxamination of the entire facts upon which the decree is obtained.   *Christmas* v. *Russell*, 5 Wall. 290; *United States* v. *Throckmorton*, 98 U. S. 61; *Sims* v. *Slocum*, 3 Cranch, 300; *Ammidon* v. *Smith*, 1 Wheat. 447; *Smith* v. *Lewis*, 3 Johns. 157; *Marriott* v. *Hampton*, 7 T. R. 269; *Demerit* v. *Lyford*, 7 Foster, 541, 546; *Peck* v. *Woodbridge*, 3 Day, 30; *Dilling* v. *Murray*, 6 Indiana, 324; *Homer* v. *Fish*, 1 Pick. 435; *Lewis* v. *Rogers*, 16 Pa. St. 18; *Sidensparker* v. *Sidensparker*, 52 Maine, 481; *B. & W. R. R. Company* v. *Sparhawk*, 1 Allen, 448; *Damport* v. *Sympson*, Croke, Eliz'bth, 520; *Eyres* v. *Sedgwicke*, Croke, James, 601; *Mason* v. *Messenger*, 17 Iowa, 261, 272; *White* v. *Merritt*, 7 N. Y. 352.

When it is considered that the status of the defendant was fixed by the decree of the Connecticut court in 1881, in a proceeding of which his wife had due notice, that upon the faith of this decree he remarried the following year, and that the plaintiff made no move to establish her conjugal rights for thirteen years thereafter, and for twenty-six years after her marriage, the injustice of holding all these proceedings to be null and void, even upon the assumption of perjury committed by the defendant, becomes the more manifest.   We think that at least the record should have been received.

I regret that the court in this case has taken what seems to

me a step backward in American jurisprudence, and has virtually returned to the old doctrine of comity, which it was the very object of the full faith and credit clause of the Constitution to supersede.

MR. JUSTICE HOLMES, with whom concurred MR. JUSTICE HARLAN, MR. JUSTICE BREWER and MR. JUSTICE BROWN, dissenting.

I do not suppose that civilization will come to an end whichever way this case is decided.   But as the reasoning which prevails in the mind of the majority does not convince me, and as I think that the decision not only reverses a previous well-considered decision of this court but is likely to cause considerable disaster to innocent persons and to bastardize children hitherto supposed to be the offspring of lawful marriage, I think it proper to express my views.   Generally stated, the issue is whether, when a husband sues in the court of his domicil for divorce from an absent wife on the ground of her desertion, the jurisdiction of the court, if there is no personal service, depends upon the merits of the case.   If the wife did desert her husband in fact, or if she was served with process, I understand it not to be disputed that a decree of divorce in the case supposed would be conclusive, and so I understand it to be admitted that if the court of another State on a retrial of the merits finds them to have been decided rightly its duty will be to declare the decree a bar to its inquiry.   The first form of the question is whether it has a right to inquire into the merits at all.   But I think that it will appear directly that the issue is narrower even than that.

In *Atherton* v. *Atherton*, 181 U. S. 155, a divorce was granted, on the ground of desertion, to a husband in Kentucky against a wife who had established herself in New York.   She did not appear in the suit and the only notice to her was by mail. Before the decree was made she sued in New York for a divorce from bed and board, but pending the latter proceedings the Kentucky suit was brought to its end.   The husband appeared

201 U. S. HOLMES, HARLAN, BREWER, and BROWN, JJ., dissenting.

in New York and set up the Kentucky decree. The New York court found that the wife left her husband because of his cruel and abusive treatment, without fault on her part, held that the Kentucky decree was no bar and granted the wife her divorce from bed and board. The New York decree, after being affirmed by the Court of Appeals, was reversed by this court on the ground that it did not give to the Kentucky decree the faith and credit which it had by law in Kentucky. Of course, if the wife left her husband because of his cruelty and without fault on her part, as found by the New York court, she was not guilty of desertion. Yet this court held that the question of her desertion was not open but was conclusively settled by the Kentucky decree.

There is no difference, so far as I can see, between *Atherton* v. *Atherton* and the present case, except that in *Atherton* v. *Atherton* the forum of the first decree was that of the matrimonial domicil, whereas in this the court was that of a domicil afterwards acquired. After that decision any general objection to the effect of the Connecticut decree on the ground of the wife's absence from the State comes too late. So does any general objection on the ground that to give it effect invites a race of diligence. I therefore pass such arguments without discussion, although they seem to me easy to answer. Moreover, *Atherton* v. *Atherton* decides that the jurisdiction of the matrimonial domicil, at least, to grant a divorce for the wife's desertion without personal service, does not depend upon the fact of her desertion, but continues even if her husband's cruelty has driven her out of the State and she has acquired a separate domicil elsewhere upon the principles which we all agree are recognized by this court.

I can see no ground for giving a less effect to the decree when the husband changes his domicil after the separation has taken place. The question whether such a decree should have a less effect is the only question open, and the issue is narrowed to that. No one denies that the husband may sue for divorce in his new domicil, or, as I have said, that if he gets a decree when

630 OCTOBER TERM, 1905.

HOLMES, HARLAN, BREWER and BROWN, JJ., dissenting. 201 U. S.

he really has been deserted, it will be binding everywhere. *Hawkins* v. *Ragsdale*, 80 Kentucky, 353, cited 181 U. S. 162. *Cheely* v. *Clayton*, 110 U. S. 701, 705. It is unnecessary to add more cases. The only reason which I have heard suggested for holding the decree not binding as to the fact that he was deserted, is that if he is deserted his power over the matrimonial domicil remains so that the domicil of the wife accompanies him wherever he goes, whereas if he is the deserter he has no such power. Of course this is a pure fiction, and fiction always is a poor ground for changing substantial rights. It seems to me also an inadequate fiction, since by the same principle, if he deserts her in the matrimonial domicil, he is equally powerless to keep her domicil there, if she moves into another State. The truth is that jurisdiction no more depends upon both parties having their domicil within the State, than it does upon the presence of the defendant there, as is shown not only by *Atherton* v. *Atherton*, but by the rights of the wife in the matrimonial domicil when the husband deserts.

There is no question that a husband may establish a new domicil for himself, even if he has deserted his wife. Yet in these days of equality I do not suppose that it would be doubted that the jurisdiction of the court of the matrimonial domicil to grant a divorce for the desertion remained for her, as it would for him in the converse case. See *Cheever* v. *Wilson*, 9 Wall. 108. Indeed in *Ditson* v. *Ditson*, 4 R. I. 87, which, after a quotation of Judge Cooley's praise of it, is stated and relied upon as one of the pillars for the decision of *Atherton* v. *Atherton*, a wife was granted a divorce, without personal service, in the State of a domicil acquired by her after separation, on the sole ground that in the opinion of the court its decree would be binding everywhere. If that is the law it disposes of the case of a husband under similar circumstances, that is to say of the present case, *a fortiori;* for I suppose that the notion that a wife can have a separate domicil from her husband is a modern idea. At least *Ditson* v. *Ditson*, confirms the assumption that jurisdiction is not dependent on the wife's actually residing in

the same State as her husband, which has been established by this court. *Atherton* v. *Atherton,* 181 U. S. 155; *Maynard* v. *Hill,* 125 U. S. 190; *Cheever* v. *Wilson,* 9 Wall. 108. When that assumption is out of the way, I repeat that I cannot see any ground for distinguishing between the extent of jurisdiction in the matrimonial domicil and that, admitted to exist to some extent, in a domicil later acquired. I also repeat and emphasize that if the finding of a second court, contrary to the decree, that the husband was the deserter, destroys the jurisdiction in the later acquired domicil because the domicil of the wife does not follow his, the same fact ought to destroy the jurisdiction in the matrimonial domicil if in consequence of her husband's conduct the wife has left the State. But *Atherton* v. *Atherton* decides that it does not.

It is important to bear in mind that the present decision purports to respect and not to overrule *Atherton* v. *Atherton.* For that reason, among others, I spend no time in justifying that case. And yet it appears to me that the whole argument which prevails with the majority of the court is simply an argument that *Atherton* v. *Atherton* is wrong. I have tried in vain to discover anything tending to show a distinction between that case and this. It is true that in *Atherton* v. *Atherton,* Mr. Justice Gray confined the decision to the case before the court. Evidently, I should say, from internal evidence, in deference to scruples which he did not share. But a court by announcing that its decision is confined to the facts before it does not decide in advance that logic will not drive it further when new facts arise. New facts have arisen. I state what logic seems to me to require if that case is to stand, and I think it reasonable to ask for an articulate indication of how it is to be distinguished.

I have heard it suggested that the difference is one of degree. I am the last man in the world to quarrel with a distinction simply because it is one of degree. Most distinctions, in my opinion, are of that sort, and are none the worse for it. But the line which is drawn must be justified by the fact that it is

a little nearer than the nearest opposing case to one pole of an admitted antithesis. When a crime is made burglary by the fact that it was committed thirty seconds after one hour after sunset, ascertained according to mean time in the place of the act, to take an example from Massachusetts (R. L. c. 219, § 10), the act is a little nearer to midnight than if it had been committed one minute earlier, and no one denies that there is a difference between night and day. The fixing of a point when day ends is made inevitable by the admission of that difference. But I can find no basis for giving a greater jurisdiction to the courts of the husband's domicil when the married pair happens to have resided there for a month, even if with intent to make it a permanent abode, than if they had not lived there at all.

I may add, as a consideration distinct from those which I have urged, that I am unable to reconcile with the requirements of the Constitution, Article 4, section 1, the notion of a judgment being valid and binding in the State where it is rendered, and yet depending for recognition to the same extent in other States of the Union upon the comity of those States. No doubt some color for such a notion may be found in state decisions. State courts do not always have the Constitution of the United States vividly present to their minds. I am responsible for language treating what seems to me the fallacy as open, in *Blackinton* v. *Blackinton*, 141 Massachusetts, 432, 436. But there is no exception in the words of the Constitution. "If the judgment is conclusive in the State where it was pronounced it is equally conclusive everywhere." *Christmas* v. *Russell*, 5 Wall. 290, 302; Marshall, C. J., in *Hampton* v. *McConnel*, 3 Wheat. 234; *Mills* v. *Duryee*, 7 Cranch, 481, 485; Story, Const. § 1313. See also *Hancock National Bank* v. *Farnum*, 176 U. S. 640, 644, 645. I find no qualification of the rule in *Wisconsin* v. *Pelican Ins. Co.*, 127 U. S. 265. That merely decided, with regard to a case not within the words of the Constitution, that a state judgment could not be sued upon when the facts which it established were not a cause of action outside the State. It did not decide or even remotely suggest that the judgment

would not be conclusive as to the facts if in any way those facts came in question. It is decided as well as admitted that a decree like that rendered in Connecticut in favor of a deserting husband is binding in the State where it is rendered. *Maynard* v. *Hill,* 125 U. S. 190. I think it enough to read that case in order to be convinced that at that time the court had no thought of the divorce being confined in its effects to the Territory where it was granted, and enough to read *Atherton* v. *Atherton* to see that its whole drift and tendency now are reversed and its necessary consequences denied.