Marshall, C. J.
For convenience the parties hereto will be referred to by their Christian names, Sarah being the wife of the first marriage and Maggie the wife of the second marriage.
This error proceeding presents three legaL questions for determination:
1. Did the industrial commission have authority to revoke the award which was made to Maggie in October, 1917, and suspend the unpaid installments of the award theretofore made?
2. What are the respective and relative lights of Maggie and Sarah as between themselves?
3. Has the executrix of Sarah the right to prosecute her claim, no award having been made to her by the commission and no judgment having been rendered in her favor on appeal during her lifetime?
These questions will be discussed in the order above enumerated.
The first question depends primarily upon statutory provisions. A claim was regularly made for an award by Maggie shortly after the death of Hiram Plumsteel, and the claim was allowed in October, 1917, and some installments paid thereon. The claim was allowed on the theory that Maggie was the *394 lawful wife of Hiram Plumsteel. On this theory she was clearly a person wholly dependent and therefore entitled to an award to the full limit of the provisions of Section 1465-82, General Code. Thereafter the commission determined that she was not the lawful wife of Hiram Plumsteel and revoked the order and discontinued the payments. Section 1465-86, General Code, provides: “The powers and jurisdiction of the board over each case shall be continuing, and it may from time to time make such modification or change with respect to former findings or orders with respect thereto, as, in its opinion may be justified.”
The continuing jurisdiction of the commission is further recognized in Section 1465-90, wherein provision is made for appeal from certain orders of the commission to the court of common pleas, it being provided that appeal may be made from the final action of the commission denying the right of the claimant to participate at all or to continue to participate in the fund on certain grounds including “any other ground going to the basis of the claimant’s right.”
When Section 1465-86 was enacted Section 1465-90 was also enacted, but the latter section did not originally include the right to appeal from an order denying the right to “continue to participate” in the fund. Surely the question whether the claimant is in fact a dependent goes “to the basis of the claimant’s right,” and if this is one of the orders from which an appeal may be taken it necessarily follows that the commission is empowered tp make orders denying the,right.of a claimant to continue to participate in the fund upon grounds going to the *395 basis of the claimant’s right. It should not be necessary to look to the provisions of any other section to determine the proper construction to be given to the above-quoted language in Section 1465-86. It is impossible to find any ambiguity in the language employed, and, by its terms, power and jurisdiction are clearly conferred upon the commission to modify or change any findings or orders, as in its opinion may be justified. In making an award the commission makes both a finding and an order. It must find the essential facts to entitle the claimant to participate in the fund and then make the order for payment. The section contains no qualifying words. No reasons are required to be stated, and it is only necessary that the change or modification may find justification in the opinion of the members of the commission. That section is of course m pari materia with all the other sections of the workmen’s compensation law and the commission may not run counter to other provisions or modify or change its orders in such manner as to run counter to other sections, neither may such modifications or changes be arbitrary or groundless. It is well understood that the primary purpose of. a continuing jurisdiction is to give a board or tribunal the power to modify or change a judgment or order to meet changed conditions, or to do justice in the light of newly-discovered evidence, or to correct an order which was made as the result of fraud or imposition, or an order which would not have been made if certain facts later discovered had then been known to exist. It is easy to conceive that certain facts and circumstances call more loudly for modification or change of the commission’s orders than other facts *396 and circumstances, and that there are certain orders of the commission to which modification or change can have application with more reason than certain other orders, but the language of the section above quoted is so general that any effort to draw the line between one finding or order and any other finding or order must necessarily create endless confusion.
We are not unmindful that the foregoing construction of Section 1465-86 runs counter to the former decision of this court as declared in the case of State, ex rel. Munding, Auditor, v. Industrial Commission, 92 Ohio St., 434, and without attempting to review the opinion in that case it may be said that there was perhaps more justification for the judgment of the court in that case at that time than there would be at the present time. At the time that case was decided, in 1915, no provision was made for an appeal from the final action of the commission denying the right of a claimant to continue to participate in the fund. After that decision, in March, 1917, Section 1465-90, General Code, was amended to give the right of appeal from such orders. There can therefore be no reason for drawing any distinction or making any classification of findings or orders concerning the power of the commission to modify or change. Even without the express provisions of the statute, the commission might very well be held to have inherent right to revoke an order where it was clear that the order had been obtained by imposition or upon a showing of facts which were later found not to exist.' The commission should be held to have inherent power to prevent the misappropriation or the misapplication of the insurance fund to claimants who are afterwards found not to be en *397 titled thereto. The state insurance fund is in the nature of a trust fund and it is the duty of the commission to impartially distribute the same among persons entitled thereto and not permit the fund to be depleted or become the object of fraud or imposition, and it being clearly their moral and legal duty to correct any mistake or fraud or imposition which will result in a misapplication or misappropriation of any part of the fund the law should not be so construed, even in case of ambiguity, neither should the legislature be held to have intended to enact any provisions which would in any manner hamper or interfere with the members of the commission in their efforts to properly protect the fund. A familiar way of testing any controverted proposition is by supposing extreme cases. Let us therefore suppose that an award had been obtained by the perjured testimony of a large number of witnesses and that each and all said witnesses later confessed to the perjury, thereby clearly establishing that the awmrd was an unjust one; or suppose that the person who would really be dependent is dead and that some one has impersonated him and after award the impersonation is exposed; or suppose that the employe has been killed by an accident which occurred after the employe had reached his home at the end of his day of service and that the accident had no relation whatever to the employment, but by means of perjured testimony the commission should be convinced that the injury occurred directly in the course of the employment, and the true facts should later be discovered after an award made.
In any of these supposed cases, or in hundreds of other cases which might easily occur, should the ae *398 tion of the commission in making an award be held to be a finality and beyond the power of the commission to make correction?
The power of the commission to set aside an award is found in Section 1465-86, and the language there employed is general. If its order can be set aside in case of fraud, it can also be set aside where its order was wrong, even though no fraud was practiced, and conversely if it cannot be set aside in cases where it has been discovered that an honest mistake was made, then it cannot be set aside in case of fraud.
Further justification of the conclusions we have reached is found in the fact that throughout the industrial commission act its purpose is declared to be for the protection of dependents of killed employes and not for persons who are merely dependents upon dependents. It further appears throughout the act that while money already paid cannot be recovered back, nevertheless the fund is protected for the real dependents until payment is made. This is indicated by the provisions of Section 1465-88, which protects the award from claims of creditors and from attachment or execution and requires that payment shall only be made to employes or their dependents. This indication finds further support in the last paragraph of Section 1465-83, where it is provided that in all cases of death from causes other than the injury for which award had theretofore been made on account of temporary, or permanent partial, or total disability, in which there remains an unpaid balance, representing payments accrued and due decedent at the time of his death, the commission may in its discretion award such unpaid balance to “dependents of the decedent.”
*399 The views herein expressed are in perfect analogy to the provisions of the General Code relating to new trial of civil actions. It is provided in Section 11573 that npon certain grounds for new trial the application must be filed within three days from the rendition of the verdict. But neither this limitation, nor any limitation, is placed upon “newly discovered evidence, material for the party applying, which he could not with reasonable diligence discover and produce at the trial. ” If it was considered wise to make this exception in adversary proceedings, there is much greater reason for applying the same principle where the proceedings are not adversary, but merely administrative, and where the same opportunity for discovering mistake or imposition does not exist. The first question must therefore be determined in the affirmative, to the effect that the commission had the power under Section 1465-86 to revoke the award theretofore made to the wife of the second marriage.
Let us next inquire concerning the respective and relative rights of these two unfortunate women. It has been argued with much force, supported by much authority, that a presumption should be. indulged of the validity of the second marriage, and that , even thqugh conceding there was a former valid marriage .the burden will be imposed upon the wife of the first marriage, and especially so, when, as in , the case at bar, it is. clearly shown that the first wife is living, to overcome tbe presumption that a divorce was obtained before contracting'the second, marriage. Many authorities have been .cited in support of this principie,, and it. may be conceded that by far the larger number of authorities so hold. Many authorities have been cited which if they should be followed *400 would be decisive of this case in favor of the rights of the second wife, unless it should be found that there is enough in this record to overcome such presumption. A brief examination of the record shows that there was a domicile of the first marriage in the state of New York, which was in fact the last domicile, and that the first wife always lived at Niagara Falls after the domicile there was established. No divorce could have been obtained in New York state without personal service upon the first wife, and no divorce could have been obtained in Ohio without a copy of the published notice being mailed to her, and since these are the two most likely states where proceedings must have occurred, if at all, it is apparent that no valid proceedings were ever had in either of those states, because it is apparent from this record that the first wife had no knowledge of any divorce proceedings. It is inconceivable that she would have continued to receive support up to 1912 or 1913 if a divorce had been obtained prior to that time, or that she would have made any effort, or that her daughters would have made any effort in her behalf, to obtain further support, if there had been a legal separation at the suit of the husband. This record shows that such effort did continue up to within about three months of the death of Hiram Plumsteel. The record also shows that Plumsteel told the second wife that his first wife was dead and that he told the same thing to her brother arid to the attorney Mr. Mecartney. Nowhere does it appear that he ever claimed to have been divorced. If he had ever in fact been divorced it would have been just as easy to have assigned that reason to show his right to remarry, because that would have been *401 conclusive, while it is apparent that a false statement of the first wife’s death was a very dangerous ground upon which to rest his claim for security. Even if this court should follow the rule so frequently declared in other jurisdictions, we must still reach the conclusion from this record that there is enough to overcome any such presumption and to place upon the second wife the obligation of proving that by valid divorce proceedings Hiram Plumsteel was free to contract a valid second marriage.
We are not, however, content to decide so important a proposition upon precedent alone. This court is not bound by the decisions of the courts of other states, or even by the former decisions of this court, unless the declarations of principles in such former adjudicated cases commend themselves by their essential soundness. There is of course a presumption that any marriage which has been solemnized in accordance with the laws of the jurisdiction where the ceremony is performed is valid. There is also a presumption that any marriage which has been properly and legally solemnized, and the status of the parties which has been thereby fixed and determined, shall continue until terminated by death, or by the decree of some court of competent jurisdiction having both parties before it by due process of law. If both of these presumptions could be indulged without either doing any harm to the other, it would be the best solution of the problem, but unfortunately in order for one presumption to be indulged it is necessary in many instances that the other must be violated. It has been said that to indulge the presumption of the continued existence of the former marriage would place upon the second wife the bur *402 den of proving a negative, to-wit, that the first wife was not dead or that she was not divorced. This view entirely loses sight of the fact that to indulge the presumption of the validity of the second marriage places upon the first wife the burden of proving a negative, to-wit, that no decree of divorce has been awarded.
It would seem that the latter negative would be the more difficult to prove. This record shows that Plumsteel traveled all over the world, and divorce proceedings are recognized in every state in the Union except South Carolina, and in many of them constructive service is rather loosely safeguarded. In order for the first Avife to affirmatively disprove the existence of a divorce, she would have to investigate the court records in all of the counties of forty-four states of the Union. But let us suppose that Plumsteel had obtained a decree of divorce in any state other than New York, the last domicile of the marriage having been in New York state a divorce obtained by constructive service in any other state would have no validity. This has been decided in the case of Haddock v. Haddock, 26 Sup. Ct. Rep., 525 (201 U. S., 562). In that case it was held in a five to four decision that “the mere domicile within the. state of one party to the marriage does not give the courts of that state jurisdiction to render a decree of divorce enforceable in all the other states by virtue of the full faith and credit clause of the Federal Constitution against a iion-resident who did not appear and was only constructively served with notice of the pendency of the action.” ,
The domicile of the marriage was in New York state. The husband obtained a residence in Con *403 nectieut and obtained a decree of divorce upon constructive service, and thereafter remarried in the state of Connecticut and children were bom of such marriage. Thereafter the husband, while sojourning in the state of New York, was served with summons by the wife in a suit for alimony, and it was held that the Connecticut divorce proceedings had no force or validity against' the wife of the New York marriage. This case necessarily eliminates the possibility of any valid divorce decree outside of the state of New York. In this case both wives appear to have been worthy women. Both were grossly imposed upon. It would seem to be a more reasonable doctrine to require the burden of proof to be placed upon the second wife, because it was not possible for the first wife to have followed her recreant husband all over the world in order to prevent another marriage of an unlawful nature, while it was within the power of the second wife to have made inquiry or to have insisted upon some information concerning Plumsteel’s antecedents. It seems much better to insist that a little ordinary business prudence should enter into a prospective marriage, and that when a woman does not insist upon knowing something about the past life of the prospective bridegroom it is more reasonable that she should take the consequences of her imprudence than that the consequences should be visited upon a perfectly innocent lawful wife, who had no knowledge and no means of knowledge that the second marriage was about to occur.
We are not entirely without authority on this subject in Ohio. In the case of Evans v. Reynolds, 32 Ohio St., 163, it was held that a marriage solemniz *404 ed in due form is presumed to be lawful until some enactment which annuls it is produced and proved by those who deny its validity. In that case the validity of the former marriage was brought in question, there being no question as to the fact of the marriage, and yet it was held that the admission of the fact of the marriage placed the burden upon the opposing party to prove its invalidity. While the facts in that case are not by any means parallel to the facts in the case at bar, surely the principle upon which that case was decided is applicable to the case at bar. If, as that case holds, the validity of a first marriage will be presumed, surely a fortiori the presumption of the continuance of the marriage relation should be indulged in favor of a wife who is conceded to have been lawfully married. That being the only case ever decided by this court which seems to throw any light upon the question, the views we are taking of the instant case must be held to be supported by the former declarations of this court.
The violations of marriage contracts have become so common, and obtaining a decree of divorce has become so easy and frequent, that some courts have evidently mistaken certain loose notions on the subject for sound legal principles. To follow the trend of the numerous authorities in other states would only further augment the much-discussed divorce evil. One of the chief causes of the frequency of divorce is the fact that marriages are contracted in haste, and it does not seem consonant with modern conditions on that subject to encourage .marriage between comparative strangers without any inquiry by either into the past life or antecedents of the *405 other. We therefore approve the conclusion of the court of appeals in this case that the first wife is the lawful dependent in this case.
Finally, it must be determined whether, the first wife is a dependent within the true meaning of Section 1465-82, and whether an award can be made to her estate, she having died before the cause was heard upon appeal in the court of common pleas. Our attention has been called to many authorities, English and American, as to what constitutes a dependent. It will be found, however, that the statutory provisions differ in all jurisdictions, and it will be further found that there is not as much uniformity as might be desired in the decisions where the statutory provisions are substantially the same. We think the question of dependency can be determined by examination of the provisions of the statute without reference to other adjudicated cases.
The section above referred to provides that the following persons shall be presumed to be wholly dependent for support upon a deceased employe: “ (A) A wife upon a husband Avith whom she lives at the time of his death.” Clearly Sarah Plumsteel was not living with her husband at the time of his death, nor for fourteen years prior thereto. She bad been receiving no support from him for four or five years. It must be conceded therefore that she is not properly classed as a person wholly dependent. The same section further provides: “In all other cases, the question of dependency, in whole or in part, shall be determined in accordance \rith the facts in each particular case existing at the time of the injury resulting in the death of such employe, but no person shall be considered as dependent un *406 less a member of the family of the deceased employe, or bears to him the relation of husband, or widow, lineal descendant, ancestor or brother or sister.”
We have already found that Sarah Plumsteel was the widow, and must therefore have been a member of his family, even though he had forsaken her many years before, and even though he had neglected the natural and legal obligations he owed her. Under such circumstances it is urged that she should not be adjudged a dependent unless she was in fact receiving support from him. Upon no principle of law, reason or common sense can such a position be maintained. Dependency rests upon an obligation of support and not upon the question as to whether that obligation is being discharged. To hold that a recreant husband can relieve himself of such an obligation by his mere defiant refusal to discharge the obligation would be to permit a person to take advantage of his own wrongdoing. It is not a question of how well he fulfilled his legal obligations, or how faithful he was in fact in the performance of those promises of support which are a part of the marriage contract and which are supplemented by elaborate statutory provisions clearly defining his duty to support and maintain his wife in so far as he is able to do so; the question is, Was there a duty on his part and has anything occurred to relieve him of that duty?
The marriage contract, supplemented by statutory enactments, clearly created the duty, and he cannot relieve himself therefrom by his own acts any more than a man can lift himself clear of the ground by tugging at his boot straps. He can only *407 be relieved by tbe decree of some court of competent jurisdiction after process duly served upon tbe other party to the contract.
This conclusion is in harmony with the spirit of the case of Industrial Commission v. Drake, 103 Ohio St., 628, recently decided by this court, in which a son was held to be a partial dependent of his father, who was not in fact discharging his obligation of support in a lawful way. Under the language of Section 1465-82, General Code, Sarah Plumsteel must be held to have been a partial dependent and therefore entitled to have the question of the value of her dependency determined in accordance with the facts of this particular case existing at the time of the death of Hiram Plumsteel. Inasmuch as she has deceased before that matter has been adjudicated, it becomes a very simple proposition. Under paragraph 3 of Section 1465-82 she should be awarded two-thirds of his average weekly wages, and it should continue from the time of his death to the time of her death. This is clearly in accordance with the facts of this case, and no other conclusion could be in accordance with the facts>, because it appears that all further compensation has already been paid.
It is urged, however, that no award can be made in this case in favor of the estate, because when this matter comes on for determination in the court of common pleas it will appear that there are no dependents at the time of the hearing, and we are cited to the case of Doyle, Admx., v. B. & O. Rd. Co., 81 Ohio St., 184, in support of that contention. That case, however, was prosecuted under favor of Section 10770, General Code, the provisions of which *408 a.re very different from the provisions of the industrial commission act. That section merely creates a cause of action, and the right is not complete until a judgment is rendered in favor of the claimant. Under Section 1465-82 the cause “shall be determined in accordance with the facts in each particular case existing at the time of the injury.” The right of Sarah Plumsteel was therefore complete at the time of the injury to Hiram Plumsteel resulting in his death. She was entitled to an award at that time, and if her claim had been promptly presented it would have been the duty of the commission to make the award, and under the principles we have declared herein it would also have been the duty of the commission to have revoked the award at the time of her death.
The judgment of this court is therefore that the judgment of the court of appeals be affirmed and this cause be remanded to the court of common pleas of Franklin county, for further proceedings in accordance with this opinion.

Judgment affirmed.

Johnson, Hough, Wanamaker, Jones and Matthias, JJ., concur.