O’NIELL, Chief Justice
 

 (dissenting).
 

 My reason for declining to subscribe to the prevailing opinion and decree in this case is that I am convinced by the evidence that Mr. Voorhies went to Reno for the purpose only of obtaining a divorce, and not with any intention of residing there permanently.
 

 It is conceded in the prevailing opinion that, if Mr. Voorhies went to Reno for the purpose only of obtaining a quick and easy divorce, and without any intention of residing there permanently, the decree of divorce which-he obtained there would not be entitled to recognition as a valid decree in Louisiana. The decree might be valid in Nevada, but not in Louisiana. Haddock v. Haddock, 201 U.S. 562, 26 S.Ct. 525, 50 L. Ed. 867, 5 Ann.Cas.' 1. The district court in Reno never had jurisdiction to render a judgment against Mrs. Voorhies. She was never in Nevada. She and her husband were residing in Louisiana before they were married, and when they were married, and in fact until he went to Reno to obtain a divorce. Even then she remained here. They were married in Louisiana; their matrimonial domicile was established in Louisiana, and was never in any other state. Neither was her domicile ever anywhere else. By a fiction of law, the husband’s domicile" becomes that of the wife. Article 120 of the Civil Code declares: “The wife is bound to live with her husband to follow him wherever he chooses to reside.” But that does not mean that a wife is bound to follow her husband to Reno to facilitate his obtaining a divorce. He never did choose to reside in Reno, except for the few months’ residence which the law of Nevada requires for the granting of a divorce. ,
 

 It is stated in the majority opinion in this case that Mr. Voorhies admitted in his testimony that, when he resigned his position in Louisiana and was about to depart from
 
 *421
 
 the state, he told his wife and others that he was going to leave Louisiana permanently and establish a domicile elsewhere, and that, wherever he might reside, he expected to sue for a divorce. It is said also that he admitted that he went to Nevada because he understood that the laws of that state required only a short period of residence there for one to become a citizen, and that, “inasmuch as he expected to seek a divorce” wherever he went, that fact influenced him in going to Nevada. Mrs. Voorhies, therefore, knowing that her husband was leaving Louisiana permanently and with the intention of establishing a domicile elsewhere, but knowing also that, wherever he chose to reside, he expected to sue for a divorce, was not obliged to follow him to Reno. "On the contrary, her duty was to entreat him not to leave her, not to say: “Wither thou goest, I will go; and where thou lodgest, I will lodge, — even though it be in Reno.”
 

 Mr. Voorhies left Louisiana on the 18th and arrived in Reno on or about the 21st day of October, 1929, and he filed his suit for a divorce on or about the 22d day of January, 1930, that is, on or about the 93d day after his arrival in Reno. The district court in Reno found, after due deliberation, as shown by the judgment copied in the prevailing opinion in this case, that Mr. Voorhies was “entitled to a decree of divorce as prayed for in his complaint on the ground of extreme cruelty.” It is certain that Mrs. Voorhies was not guilty of any extreme cruelty in Nevada, because she was never in Nevada. The extreme cruelty which the Nevada judge had reference to must have occurred in Louisiana before Mr. Voorhies left the state. If so, the right to a divorce on that ground should have been determined by the laws of Louisiana, and by a court in Louisiana, where the defendant would have had an opportunity to defend herself against the accusation of cruelty. Under the law of Louisiana, article 138 of the Civil Code, cruel treatment, of one of the spouses by the other, is not a ground for divorce or for a decree of separation from bed and board, unless “such ill treatment is of such a nature as to render their living together insupportable.” If there was any ill treatment of Mr. Voorhies by his wife while they were living in Louisiana, she was entitled to have a judge at her domicile, in Louisiana, to decide whether the ill treatment was of such a nature as to entitle Mr. Voorhies to a decree of separation from bed and board.
 

 I observe that the majority opinion in this case is founded upon the finding of fact that Mr. Voorhies, in good faith, established a residence in Reno before suing for a divorce. For that reason, it may be that this case will not establish a bad precedent. But from my own perception of the facts of the case, I apprehend that it will establish a bad precedent. I have no aversion for Reno divorces, eo nomine. Reno’s fame in that respect would not justify a refusal to recognize the validity of a decree of divorce rendered by a Reno court having jurisdiction over the defendant in the case, or over the matrimonial status. But the one proposition above all others, which Haddock v. Haddock is authority for, is that a right of action for divorce is not a transitory right of action.
 

 
 *423
 
 The fact that Mr. Voorhies is married again makes me regret very much that I do not consider his decree of divorce a valid decree. But I am not' willing that a hard case should make bad law. The remedy should be for Mr. Voorhies to adhere to what he claims was his original intention, to reside in Nevada, where his decree of divorce is considered valid.
 

 FOURNET, JT., takes no part.